CARLTON VS. BUCKNER et al.

OPEN ACCOUNTS: *Action on, when barred by taking note.*
   A note given and accepted in discharge of an open account will bar
   an action on the account; and when a note is taken subsequent to
   the existence of an account, the presumption of law is, the outstand-
   ing account is settled by the note; but this is merely a presumption,
   and may be rebutted by proof.

VENDOR'S LIEN: *When assignee subrogated to rights of, etc.*
   Where the vendor conveys land by deed, taking the note of the vendee
   for the purchase money, a mere assignment of the note does not
   transfer to the assignee the benefit of the vendor's lien upon the
   land for the payment of the purchase money; but where the assign-
   ment is made as collateral security for the notes of the vendor,
   such *peculiar equitable circumstances exist* that, in such case, the
   assignee, holding the lien as well for the benefit of the assignor as
   for himself, is subrogated to all his equities.

APPEAL from *Chicot* Circuit Court.
*Bell & Carlton,* for appellant.
*Garland & Nash,* for appellees.

STEPHENSON, J.   Daniel H. Sessions sold to Richard R.
Sessions a plantation in Chicot county, known as the "Luna
place," for the sum of $62,552, to be paid in five annual in-
stallments; to secure the payment of which, Richard R. Ses-
sions gave to Daniel H. Sessions, drafts upon and accepted by
himself, the first of which fell due January 1, 1859.   Daniel
H., by deed of even date with the first acceptance, conveyed
the land to Richard R. Sessions.   This conveyance is in the
usual form of a warranty deed, except that the grantor re-
served to himself, in express terms, a vendor's lien for the
purchase money.   In 1868, Daniel H. Sessions assigned the
last two acceptances (the others having been paid) to the ap-
pellees, as collaterals, to secure them for supplies furnished

him in his planting business. There was due upon these, at the date of the assignment, of principal the sum of $23,062.64. As an additional security, appellees took from Sessions his note for $16,000, secured by a mortgage on his interest in another plantation in Chicot county, known as the "Lake place," and it was understood between them that the total amount of advances should not exceed $16,000. In the spring of 1868, Sessions' account with appellees received a credit of $11,417.44 for cotton shipped them; and in June of that year, the account being made up, Sessions was found to be indebted to the appellees in the sum of $8,738.80, to recover which this suit was instituted on the chancery side of the circuit court.

Appellees rely for the equity of their case on their right to foreclose the lien specially reserved in the deed of Daniel H. Sessions to Richard R. Sessions, which passed to them by the assignment. Appellees charge, in their bill, that at some time prior to the bringing of their suit, Richard R. Sessions conveyed the land sought to be subjected to the payment of their debt to one John W. Gibson, who conveyed the same to Daniel H. Sessions, in trust, for Mary P. Sessions, wife of Richard R. Sessions — said Mary P. Sessions is now in possession. They also charge that the law firm of Bell & Carlton set up some kind of claim to the land, and pray that all parties making claim to the premises be made to disclose the same; that he have a decree for his debt; that the same may be declared a lien on the "Luna plantation" and for general relief.

Upon failure to answer, the bill was taken as confessed as to all the defendants except Carlton, who denied the allegations of the bill generally, and by way of disclosing his own claim to the land, exhibits a sheriff's deed, made him by the sheriff of Chicot county as purchaser under execution sale, upon a judgment in favor of one Smith, against Richard R.

Sessions, in the Chicot circuit court, rendered June 26, 1866. Carlton, also, made his answer a general demurrer to the bill.

The cause went to the hearing upon the bill, demurrer and answer of Carlton and the depositions of appellees' witnesses.

The chancellor found that there was due on the acceptances of Sessions, in the hands of the appellees, the sum of $35,-051.99; that of this amount, appellees were entitled, by their transactions with Daniel H. Sessions, to $10,020.49; that appellees, as assignees of the acceptances of Richard R. Sessions, were subrogated to the right of Daniel H. Sessions to enforce his lien, and decreed payment of principal and interest due — appellees' account against Daniel H. Sessions to them and the balance to Daniel H. Sessions, with decree for sale on default of payment, etc. The settlement of the question raised by Carlton's demurrer will dispose of this case; for if the appellees are properly in court, the proof abundantly supports their bill. And there is nothing in the answer of Carlton and the exhibits thereto, which discloses any superior or equal rights to the appellees, if any they have under their bill.

It is contended by the appellant Carlton, that the note for $16,000, executed by Daniel H. Sessions, was an extinguishment of his prior indebtedness, and that appellees must look to this note for the payment of the debt, and as the note was not due when suit was brought, the bill is demurrable. It is true that a note given and accepted in discharge of an open account, bars an action on the account; and when a note is taken subsequent to the existence of an account, the presumption of law is, that the outstanding account is settled by the note; but it is a presumption merely, and may be rebutted by proof. It is a question of intention. *Costar v. Davies*, 3 Eng., 217; *Weaver v. Caldwell's Ex'r*, 4 id., 343.

Let us examine the testimony as to the intention of the parties. Henry S. Buckner swears that Daniel H. Sessions,

in December, 1866, or January, 1867, made an arrangement with Buckner & Co. for his advances and supplies, and placed in their hands the two collaterals (here sued on) as security ; and, as additional security, agreed to give his note for sixteen thousand dollars, and secure the same by mortgage on "Old Lake place," and were to advance him a sum, the total amount of which, including that already owed, should not exceed the proceeds of the $16,000 note. "We took the mortgage to secure advances to be made to him, in addition to the two collateral notes." This, with the fact that the notes were allowed to remain in the hands of the appellees, shows very clearly to our minds that the $16,000 note was not given and accepted as a settlement of the account, but merely to secure its payment. The fact that the appellees stipulated that the amount of the advances should not exceed the proceeds of the $16,000 note does not, in our opinion, affect this concluclusion. They had an undoubted right to measure the amount of their advances with the security taken, and this is all they seem to have intended. It is contended by counsel that appellees should have exhausted the security on "Old Lake place" before going on the notes sued on, thereby imperiling Carlton's rights under his sheriff's deed. With that question, under the state of pleadings in the case, we have nothing to do. He could have presented that question to the court below, but he has contented himself to rely upon a denial of Sessions' indebtedness and to the questions of law raised by his demurrer, and this court cannot go outside of the pleadings in the case.

There is another question raised by Carlton's demurrer which the court find it necessary to decide. Are the appellees subrogated to the rights of the vendor Sessions to his lien? In *Crawley v. Riggs et al.*, 24 Ark., 563, it was held, that where the vendor conveys land by deed, taking the note of the vendee

for the purchase money, a mere assignment of the note does not transfer to the assignee the benefit of the vendor's lien upon the land for the payment of the purchase money — the lien of the vendor being personal to him and not assignable, unless under some *peculiar equitable circumstances.* But the peculiar equitable circumstances under which the vendor's lien follows the notes in the hands of an assignee *do* exist where the assignment is made as collateral security for the notes of the vendor. The assignee, in such case, holding the lien as well for the benefit of the assignor as for himself, is subrogated to all his equities.

The case at bar comes fairly within this rule. The enforcement by the appellees of payment of these notes inures, it is true, to their benefit, but not more than to the assignor Daniel H. Sessions. And the rule seems to be well settled, that when there exists peculiar equitable circumstances, the right of the assignee to the vendor's lien passes with the assignment. In *Hallock v. Smith,* 3 Barb., 272, Mr. Justice STRONG says: "If the note or bond for the purchase money is assigned or transferred to a third person for his benefit, the security (the vendor's lien) is gone forever. The reason is, there is no peculiar equity in favor of third persons. But that does not apply where, as in this case, the transfer is only for the purpose of paying the debt of the vendor, so far as it may be available, and is, therefore, for his benefit: there the equity continues." This court, in *Shall v. Biscoe et al.,* 18 Ark., 142, cites the case of *Hallock v. Smith,* and clearly marks the distinction between the latter and the cause there decided, which was the assignment of a like note in the ordinary course of trade. Nor does this conflict with *Sheppard v. Thomas,* 26 Ark., 617, and *Jones v. Doss et al.,* decided at this term. In both the latter cases the court, so far as it might affect this question, only considered the effect of the special reservation

of a lien in the deed, upon the rights of an assignee who takes the paper in the ordinary course of business.

The decree of the court below is, in all things, affirmed, with costs.

McLURE, Ch. J., dissenting.