BOWLES, ADMR., vs. EDDY & WILBUR.

1. CONTRACTS: *Lex Loci—Usury.*
   The validity of a note as to usury, must be determined by the usury statutes of the State where it was made, unless it designates another place for payment.
2. LAWS OF OTHER STATES: *Proof of.*
   Certified extracts by a notary public, of the laws of other States, are not evievidence of them: They should be proved as indicated in *McNeill* v. *Arnold et al.,* 17 Ark., 154.

APPEAL from *Chicot* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Reynolds,* for appellant.

*Dodge & Johnson, contra.*

ENGLISH, C. J.:

On the 5th of August, 1873, John Eddy and David Wilbur, partners under the firm name of Eddy & Wilbur, brought ejectment in the Circuit Court of Chicot county against Oscar Bowles for a number of tracts of land described in the complaint.

At the return term, September, 1873, defendant, by leave of the court, entered his plea of not guilty in short upon the record.

At the September term, 1874, the death of defendant, Oscar Bowles, was suggested, and Wm. W. Bowles, his administrator, substituted as defendant, and the cause continued.

At the July term, 1875, the case was called for trial, and by consent of parties submitted to the court upon the pleadings, evidence introduced, and argument of counsel, and, by consent, the court took the case under advisement until the next term.

At the October term, 1875, the court rendered judgment in favor of plaintiffs for possession of the lands, and for costs.

At the same term, on the 5th of November, 1875, the court

set aside the judgment, and again took the case under advisement until the next term.

At the January term, 1876, defendant filed a motion to set aside the submission of the cause, and for leave to set up as a special defense, in addition to the plea of not guilty, theretofore entered, that the deeds relied on by plaintiffs to show title to the lands in themselves were based upon illegal and usurious contracts, as to which defendant had introduced testimony at the hearing, and were null and void, so that the pleadings might conform to the evidence introduced in the cause.

Which motion the court took under advisement until the next term.

At the July term, 1877, the court overruled the motion to open the submission, and again rendered judgment in favor of plaintiffs for possession of the lands, and for costs.

Defendants filed a motion for a new trial, which the court overruled, and he took a bill of exceptions, setting up the evidence introduced by the parties on the submission of the cause and appealed to this court.

I. The motion of appellant to open the submission of the cause, and for leave to plead specially that the deeds relied on by appellees for title to the lands sued for, were based on usurious contracts, etc., was, under the circumstances disclosed by the record, addressed to the sound legal discretion of the court, and the overruling of the motion was not an abuse of such discretion.

It is stated in the motion, however, that the purpose of appellant in asking to be permitted to plead further, was that he might make his pleadings correspond with the evidence introduced by him on the hearing of the cause; and we deem it proper, therefore, to examine and determine whether appellant in fact proved that the deeds relied on by appellees were based

on usurious contracts, and null and void, as stated in the motion.

It appears from the bill of exceptions that appellees read in evidence a deed of trust, executed 17th February, 1866, by Charles W. Campbell and Oscar Bowles (appellant's intestate) upon the lands in controversy, to John T. Trezevant, of Memphis, as trustee, to secure the payment of a note made by said Campbell and Bowles to appellee for $14,300, payable 1st of January, 1867, with power to the trustee to sell the lands on default of payment.

Also a deed bearing date May 3d, 1870, executed by Trezevant as such trustee, to appellees, showing that he had advertised and sold the lands at Lake Village, on the 19th of March of that year in pursuance of the power vested in him by the trust deed; that they were purchased by appellees for $2,500, and conveying the lands to them.

Appellant read in evidence a copy of the note secured by the deed of trust, which follows:

"MEMPHIS, February 17, 1866.

"14,300. On the first day of January next, we jointly and severally agree to pay to the order of Eddy & Wilbur the sum of fourteen thousand three hundred dollars, value received, as witness their hands and seals.

"C. W. CAMPBELL, [SEAL.]
"O. BOWLES," [SEAL.]

It appears that appellees resided in New York; Campbell and Bowles in Chicot county, Arkansas, where the lands are situated, and that the note and deed of trust were made in Memphis, Tennessee, where Trezevant, the trustee, resided.

The note upon its face bears no interest; but appellant attempted to prove that it was executed for moneys advanced by appellees to Campbell and Bowles to aid them in cultivating cotton, upon contracts that the moneys were to be repaid with

interest, and that appellees were also to have a certain portion of the cotton pioduced.

Usury, as at present understood, is unknown to the common law, and depends wholly upon statutory enactment. *Tyler on Usury*, p. 64.

"In some cases importance seems to be attached to the circumstance that one or both of the parties were inhabitants of the State or county where the contract was made. But there is, probably, no force in the distinction attempted to be made. The rule upon the subject is, that the law of the place where the contract is made is to control it, unless it appears upon the face of the contract that it was to be performed at some other place, or was made with reference to the laws of some other place; and the reason of the rule is, not the allegiance due from the contracting parties to the government where the contract is made, or is to be executed, but the supposed reference which every contract has to the laws of the State or country where it was made, or to be executed, whether the parties are citizens of that State or country or not. But the *lex loci* applies only to the validity or interpretation of contracts, and not to the time, mode or extent of the remedy. And yet the rule is well settled, that when a contract is made with reference to another country in which it is to be executed, it must be governed by the laws of the place where it is to have its effect. But the *lex loci* is to govern, unless the parties had in view a different place, *by the terms of the contract*. To repeat then: the general rule established, *ex comitate et jure gentium*, is, that the place where the contract is made, and not where the action is brought, is to be considered in expounding and enforcing the contract, unless the parties have a view to its being executed elsewhere; in which case it is to be considered according to the laws of the place where the contract is to be executed ( *Vide Lee* v. *Selleck*, 33 N. Y., 615.) This is the doctrine of the authori-

ties as well as the elementary writers ; and it would seem as a general proposition, that, from the rule, there would be no difficulty in ordinary cases of alleged usury to determine the status under which they are to be decided." *Ib,, pp.* 81–82 ; *Jones* v. *McLean, sur. et al.*, 18 Ark., 462.

The note complained of as usurious having been executed at Memphis, Tennessee, and upon its face designating no other place of payment, its validity must be determined by the usury statutes of the State of Tennessee.

The only evidence offered by appellant of the usury statutes of Tennessee is stated in the bill of exceptions, thus :

Defendant "read a part of the plea in *Laird* v. *Hodges*, 26 Ark., 357, which is as follows : 'And the said defendant further avers that by the law of the State of Tennessee any promisory note or other instrument wherein is reserved any greater rate of interest than the rate of six per centum per annum, is wholly void.' And also read from *Martindale's Legal Directory*, pp. 593–400, as follows : 'Prior to 1870, an instrument bearing a higher rate of interest on its face than allowed by law, could not be sued on, or if sued on and usury pleaded, both interest and principal were lost, but since the enactment of 1870 it is thought only the excess of the interest is abated, and recovery may be had for the principal together with six per centum interest thereon,' to show what the usury laws of Tennessee were in 1866, the time said contracts and loan was made."

Neither what Hodges stated in his plea, in the case of *Laird* v. *Hodges*, nor *Martindale's Legal Directory*, was competent evidence of the usury statutes of Tennessee. *McNiel* v. *Arnold et al.*, 17 Ark., 154 ; *Gantt's Digest*, Secs. 2445–6.

The evidence offered by both sides at the trial, and objected to, was admitted ; the court reserving its opinion as to competency, etc., to the final decision, and doubtless the court dis-

regarded the above evidence of the usury law of Tennessee in making up and rendering its judgment.

Appellee for the purpose of showing that the note was not void, by the laws of Tennessee, for usury, but that the lender lost only the excess of interest, read in evidence what purports to be extracts from interest statutes of that State, authenticated by the certificate of a notary public of Memphis.

This was not competent evidence of the usury statutes of Tennessee, and doubtless the court disregarded it in making up and rendering its judgment.

The modes of proving the laws of the States, when relied on in our courts, were plainly indicated in *McNeil* v. *Arnold*, *sup.*, and need not be repeated here.

II. A further ground of the motion for new trial was that the court failed to find and state its conclusions of facts, and its conclusions of law, as required by section 4686, Gantt's Digest.

The statute is that, "Upon trials of questions of fact by the court, it shall state in writing its conclusions of fact found, separately from the conclusions of law."

It is not shown by the bill of exceptions whether the court did or did not reduce its findings to writing, or that it was asked and refused to do so. It does not appear that any declarations of law were asked by either party, or that the court made any.

It found for the appellees, on the evidence, nearly all of which is documentary, and is set out in the bill of exceptions.

If the court failed to reduce its findings upon the facts to writing, it should have done so upon the request of either party, and might have done so after as well as before the rendering of the judgment, for a memorial, as held in *Apperson & Co.* v. *Stewart*, 27 Ark., 619, and the refusal of the court

so to do might be error. *Chrisman et al.* v. *Rogers, ad.*, 30 Ark., 359 ; *Wood et al.* v. *Boyd*, 28 Ib., 77.

Appellees having proven, by the deeds introduced, title to the lands, and right of possession, and appellants failing to show that the deeds were invalid, or to make out any other good defense, the court could not have done otherwise than find in favor of, and render judgment for appellee, and the judgment must be affirmed.