UNION CENTRAL LIFE INSURANCE COMPANY *v.* CALDWELL.

Opinion delivered July 21, 1900.

1. EVIDENCE—LAW OF FOREIGN STATE.—The unwritten law of another state may be proved by the testimony of one skilled therein. (Page 517.)

2. PROMISSORY NOTE—CONSIDERATION—PAROL EVIDENCE.—The presumption that a note executed in settlement of an account correctly states the amount of the maker's indebtedness to the payee may be rebutted in equity by proof that it was executed under a mistake. (Page 519.)

3. FORFEITURE—WHEN SET ASIDE.—Where a note given to an insurance company for a loan stipulated that the policy, which was given as collateral security, might be sold by a trustee named to satisfy the loan if the accruing interest should not be paid when due, a sale by the trustee to the insurer will be set aside in equity if it appears that at the time of the sale no interest was due. (Page 520.)

4. MUTUAL LIFE INSURANCE—APPLICATION OF DIVIDENDS.—It is the duty of a mutual life insurance company to apply dividends to the payment of interest on loans made on the policy, when by so doing a forfeiture of all rights and benefits under the policy will be prevented. (Page 521.)

5. SAME—FORFEITURE OF POLICY.—It is the duty of a mutual life insurance company, before taking a forfeiture of a policy for default in the payment of an obligation, to notify the assured or beneficiary of the amount of declared dividends on the policy, where such dividends are insufficient to meet the obligation. (Page 524.)

Appeal from Sebastian .Circuit Court, Ft. Smith District. EDGAR E. BRYANT, Judge.

### STATEMENT BY THE COURT.

Appellee, as the beneficiary of a life insurance policy issued to his mother by the appellant, sued appellant for the amount of the policy, less an amount loaned his mother by the appellant. The answer admitted the policy and death of the assured, but denied that the policy became a paid-up policy in favor of appellee upon the death of the assured, and set up a loan made to assured upon the joint note of herself and the appellee, with the policy as collateral. It averred that this policy, pursuant to the authority contained in the note, was sold after default was made in the payment of interest on the note, which default rendered the entire note due.

The suit was brought at law, and, after the introduction of evidence for the plaintiff and defendant, the defendant requested of the court, among other instructions, to direct a verdict for the defendant, and moved the court to find for the defendant. Whereupon the court announced that the case was properly one of equitable cognizance to set aside a forfeiture. which, if not void, was inequitable; that the facts were undisputed, and left nothing to the jury, and the court would entertain a motion to transfer to equity, and was ready to decide it. Plaintiff moved to transfer to equity, which motion was granted, and the defendant excepted to all of these actions, and then, after reserving their exceptions, requested time in which to take testimony in addition to the testimony then before the court, which it was agreed the chancellor should consider. This time was given, and the company took additional evidence. At a

subsequent day the decree was rendered from which this appeal was taken.

The facts are, substantially, as follows: In 1869, the Cincinnati Mutual Life Insurance Company issued to Louisa Caldwell, the mother of the appellee, Walter O. Caldwell, a policy of life insurance in the sum of $2,000, with participation in profits, to be paid at her death, in consideration of the payment of five annual premiums of $189.34 each. Under an agreement the assured paid but $126.34 per annum on the premiums, $63 each year being loaned to her on the faith and credit of the policy. On December 13, 1872, the appellant issued to said Louisa Caldwell, in lieu of the policy issued by the Cincinnati Mutual Insurance Company, a policy of life insurance on her life, with participation in the profits, for the benefit of the appellee, in the sum of $2,000, in consideration of the payment of five annual premiums of $189.34 each, with a stipulation that the sum of $63 of each of said annual premiums should be allowed as a loan bearing interest at six per cent. from their respective dates, and acknowledged by all parties as a just indebtedness against said policy until paid or canceled by profits or otherwise. Mrs. Caldwell paid the five annual premiums, the last being July 5, 1873, when the policy was paid up. In 1894 Mrs. Caldwell applied to appellant, through Messrs. Yowell & Williams, who were state agents of appellant, for a loan with the policy as collateral security. She received the following letter:

"Little Rock, Ark., Feb. 13, 1894. Mrs. Louisa D. Caldwell, City. Madam: We have a letter from the company in regard to your policy, No. 10062. There are premium loans on this policy amounting to $487.80. If you are willing for the company to deduct the amount of the present loan, they will make a new loan of $800. If you desire this loan, please call at our office, with your son, Walter O., and we will arrange the matter for you. We have no cash surrender value, but loan you a great deal more than any other company will give you. Yours truly, Yowell & Williams, State Agents."

After this the following instrument was executed:

"$800. Cincinnati, Ohio, April 12, 1894. On or before

five (5) years after date, for value received, we jointly and severally promise to pay to the order of the Union Central Life Insurance Company eight hundred dollars, without discount or defalcation, at its office in Cincinnati, Ohio, with interest at eight per cent. per annum, payable annually, with the condition that if any installment of interest shall become due and be unpaid, then and forthwith the whole amount of principal and accrued interest shall be and become immediately due and payable. Having deposited with said company, as collateral security, policy No. 10062, upon the life of Louisa D. Caldwell in said company, we hereby authorize J. R. Clark to sell said policy at any time without notice, at public or private sale, or otherwise, in Cincinnati or any other place, at his option, in case of the non-performance of this promise, and at such sale the Union Central Life Insurance Company may be a purchaser, if it shall desire; but the sale to said company shall not be made at a price below the amount of the indebtedness evidenced by this note, applying the net proceeds to the payment of this note, including interest and cost, accounting to the undersigned for the surplus, if any. For that purpose we do hereby constitute and appoint J. R. Clark our true and lawful attorney, irrevocable, with full power of substitution for us, and in our name and stead, to sell, assign, and transfer said policy, hereby ratifying and confirming all the said attorney or substitute or substitutes may lawfully do in the premises. If said policy shall at any time lapse for non-payment of premium, all provisions in said policy providing for the issue of a paid-up or a term policy shall thereupon, and by reason whereof, forthwith become null and void. Lou D. Caldwell, Walter O. Caldwell.

"Union Central Life Insurance Company, of Cincinnati, Ohio. Received of Louisa D. Caldwell policy No. 10062, issued by the Union Central Life Insurance Company on the life of Louisa D. Caldwell for the amount of $2,000, and dated July 7, 1869, which policy is to be held as collateral security for the payment of a certain promissory note executed by Lou D. Caldwell and Walter O. Caldwell for $800 with eight per cent. interest annually, and payable to the order of said company; said note bearing date April 12, 1894, and due five years after date. The

company hereby agrees to return said policy to the said Louisa D. Caldwell when the obligations of the above note are fulfilled and its conditions complied with. Dated at Cincinnati, Ohio, April 10, 1894. E. P. Marshall, Secretary."

The amount $487.80, stated in letter *supra* as premium loans due on the policy, was deducted from the $800, and Mrs. Caldwell was paid the balance, $312.20 cash. On the policy issued by the Union Central Company was this indorsement: " Loans on Policy No. 10062. Date, December 30, 1872. Loans outstanding to July, 1873, on Cincinnati Mutual Policy 1523, $257.45. Surrendered loan for July, 1873, $42.18. Total loan against policy, $299.63. There was a clause in the policy providing that, in case of default after two years of insurance, on surrender of the policy within sixty days after default, it would issue a "new paid-up policy for an equitable amount, being not less than $800 after two years, $1,200 after three years, $1,600 after four years, and $2,000 after five years."

The secretary of the appellant appended a statement showing all the debits and credits between the defendant company and Louisa D. Caldwell upon said policy No. 10062, as the same appears upon the books of the company, together with the amount of dividends earned upon said policy and the amount of reserve or undivided profits which would have accrued to said policy if the same had been kept alive until June 14, 1895, as follows:

Statement of policy No. 10062, issued by Union Central Life Insurance Company upon the life of Louisa D. Caldwell:
Loans on policy transferred by Cincinnati Mutual Life Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $257.45

| | | Int. | Div. | Bal. Loans. |
|---|---|---|---|---|
| July 7, 1873 | New Loan $63. | $17.98 | $20.82 | $317.61 |
| "      1874 | | 18.12 | 15.99 | 319.74 |
| "      1875 | | 18.30 | 14.70 | 323.34 |
| "      1876 | | 18.50 | 15.09 | 326.79 |
| "      1877 | | 18.49 | 18.69 | 326.59 |
| "      1878 | | 19.02 | 9.62 | 335.99 |
| "      1879 | | 19.57 | 9.82 | 345.74 |
| "      1880 | | 20.14 | 10.04 | 355.84 |

| July 7, 1881 | $20.74 | $10.23 | $366.35 |
| " 1882 | 21.58 | 6.70 | 381.23 |
| " 1883 | 22.32 | 9.29 | 394.26 |
| " 1884 | 22.93 | 12.17 | 405.02 |
| " 1885 | 23.45 | 14.16 | 414.31 |
| " 1886 | 23.99 | 14.54 | 423.76 |
| " 1887 | 24.35 | 17.90 | 430.21 |
| " 1888 | 24.69 | 18.74 | 436.16 |
| " 1889 | 25.03 | 18.96 | 442.23 |
| " 1890 | 25.38 | 19.18 | 448.43 |
| " 1891 | 25.73 | 19.68 | 454.48 |
| " 1892 | 26.54 | 11.80 | 469.24 |
| " 1893 | 27.61 | 9.05 | 487.80 |

The dividend on the Cincinnati mutual policy up to 1871 was $16.88, and in 1872 the dividend was $14.89.

H. C. Mechem testified: That he practiced law in Ohio from 1867 to 1870, and at that time he undertook to be familiar with the laws of Ohio. That there was no statutory law in Ohio governing the computation of interest where there were partial payments made, but that the rule he had seen applied in courts, computations made by masters and referees and counsel and approved by the court, was that where there were partial payments made upon the indebtedness, if the partial payments exceeded the interest due at the time it was made, the interest at the legal rate was calculated, and the over-plus applied to the principal. If the payment at the time it was made did not exceed the then due interest, the payment then drew interest at the legal rate from the time it was made until such a time as the payments combined exceeded the then due interest, and then the interest due on the principal sum was calculated, and the balance, if any, was applied toward the satisfaction of the principal. If a partial payment was made, and it was less than the amount of interest at the time it was made, it would not affect the principal. The principal would go on drawing its rate of interest, and in such a case the remaining interest, after the application of the payment, would not be carried into the principal for the computation of further interest thereon. When, however, interest became due, either annually or semi-

annually, then interest was allowed on that interest. The rule had no application to interest which was past due and entitled to draw interest. Witness was not able to say whether the correctness of the rule had ever 'been raised, or whether there was a decision of the courts of Ohio saying that the rule given was the law of Ohio. He had no recollection of any such decision, although the rule was the current principle on the matter as applied in the courts.

Before the first annual interest on the note matured, the following notice was sent to Mrs. Caldwell at Little Rock, Ark., to-wit:

"Collateral Loan Interest Notice. Office of the Union Central Life Insurance Company. Louisa D. Caldwell, Little Rock, Ark. Dear Sir: The annual interest of $64 upon your loan No. 5058 falls due April 12, 1895. Please remit promptly for same by draft, post office order, or express, direct to the Union Central Life Insurance Company, Cincinnati, Ohio. Prompt payment of same on day when due is of great importance to the validity of your policy of insurance. All interest is payable direct to the company, and no agent has authority to extend the time of payment of interest. Return this notice with remittance and notify company of any change of address."

Also the following communication was written on stationery from the office of the Union Central Life Insurance Company: "Cincinnati, Ohio, April 22, 1895. Louisa D. Caldwell, Little Rock, Arkansas. Dear Sir: I beg to call your attention to the fact that the interest, $64, upon your note to this company was due April 12. I think you must have overlooked this payment, and it is only necessary to call your attention to the same, to have it paid at this office by first mail. If you desire to preserve the validity of your policy No. 10062, it will be necessary for you to remit immediately."

On May 11, 1895, Mrs. Caldwell paid to Yowell & Williams $23, to be credited on the interest due by her on April 12, 1895, on the $800 note.

The following letters were written:

"Cincinnati, Ohio, May 16, 1895. Louisa D. Caldwell, Little Rock, Ark. Dear Sir: We have not received, in response to

our letter of April 23d, your interest of $64, due April 12, 1895. The terms of the note provide that the non-payment of interest when due matures the principal, and the whole debt becomes due and immediately payable, You are therefore notified that your principal note of $800, dated April 12, 1894, together with all accrued interest to this date, is now due and payable. If you will pay the interest of $64, together with interest upon that amount from the date it was due to this date by return mail, we will waive the collection of the principal at the present time. Yours respectfully, E. P. Marshall, Secretary."

"May 25, 1895. Yowell & Williams, corner Second and Center streets, Little Rock, Ark. Gentlemen: We enclose a letter which we have received from Louisa D. Caldwell. It is evident that the lady has had some conversation with you in reference to her policy No. 10062, and, as you probably have most of the facts in the matter, we thought best to forward this letter to you. The original policy was upon the five-year payment plan, issued in 1869, in the old Cincinnati mutual. The premiums were not paid in full, as is customary now, but only two-thirds of the premiums were paid in cash, leaving the other third to be held as a loan against the policy. In all of these years these annual premium loans, together with the accrued interest, have accumulated to $487.80. On April 12, 1894, she applied for a loan upon the policy, and the company granted her a total loan of $800, a note for which the company holds. The premium notes, $487.80, which were already a loan against the policy, were deducted from the loan, and the lady received a check for the difference, $312.20. It is evident that she has entirely overlooked the items of premium loans, which have been accumulating for nearly twenty-five years. She was notified in regard to the interest due April 12, 1895, but the notice apparently did not reach her. She states that she has paid the interest to you. If you have not already sent the same to the home office, you will of course do so, and the same will be applied as a credit upon the total amount. Of course, she will have to pay interest upon the entire $800, as that is the amount the company has actually loaned her. The company does not care to allow her an additional $300 for the

surrender of the policy.   Will you be kind enough to explain this matter to her, if you have not already done so, or let us know how matters stand, so we can write her?   Yours respectfully, E. P. Marshall, Secretary."

In a letter of May 27, 1885, Yowell & Williams sent the $23 received from Mrs. Caldwell to the company, and received the following letter in reply, which they mailed to Mrs. Caldwell at Little Rock, May 31, 1895, to-wit:

"Cincinnati, Ohio, May 29, 1895.   Dear Sir: We are in receipt of your favor of May 27, 1895, enclosing check amounting to $23 (L. D. Caldwell) in part payment of your premium due———on policy 10062.   Premium note due ———on mortgage———.   Interest due April 12, 1895, $64— $23; $41 balance.   We herewith hand you the proper receipt. Yours truly, W. L. Davis, Cashier.      To Yowell & Williams, Little Rock, Arkansas, Second and Center streets.   There is a balance of $41 due.   Kindly have party forward same, and we will send receipt."

On the same day (May 29, 1895) the secretary of the company wrote to Mrs. Caldwell as follows: "Not having received from you the interest of $64 due April 12, 1895, on your note of $800, dated April 12, 1894, you are again hereby notified that both the principal and interest are therefore due and payable.   Policy No. 10062 issued by this company, and which has been assigned to it as collateral security, will be sold at auction at the home office of this company, corner Fourth and Central Ave., Cincinnati, Ohio, on June 13. 1895, at 10 o'clock a. m. to satisfy said note above described.   In accordance with the terms of the note, this company is permitted to be a purchaser at that sale.   You can prevent the sale of your policy by remitting $64 with interest from the date it was due to the date of remittance."

On the 13th of June the treasurer of the company sold the policy in question at the home office of the company.   It was sold at public auction and bought by the company for $851.66, the principal and interest on the note.   The value of the policy at that time as shown by the actuary table, was $1,180.   The appellee testified that he never received any notice

from the company in regard to non-payment of interest on the policy, or of the sale of the policy, and that he never received any of the proceeds of the $800 loan; that his mother never communicated to him that she was in default in payment of the interest, or that the policy had been sold, nor did he ever receive such information from any other source until after her death, which occurred February 5, 1897. And there is no proof in the record which contradicts his testimony.

There was an amendment of the complaint on the trial, alleging that the correct amount due the company at the time the $800 loan was made was not $487.20, but $395.89. The prayer of the amended complaint was that said forfeiture and sale be set aside and held for naught, and for judgment for the sum of $2,000 and for $ ——, the amount of profits upon said policy, less the sum of $312.20, with interest thereon from the 12th day of April, 1894, at the rate of eight per cent. per annum with a credit thereon of $23 of date May 11, 1895, and less the loans reserved from the premium, to-wit: $63 for five years, with interest thereon at the rate of six per cent. per annum from the respective dates of the creation of said loans until the making of said note of the 12th of April, 1894, when said loans would, by virtue of said note, bear interest at the rate of eight per cent. per annum, and for all other and further relief.

The court rendered a decree in the cause, finding that plaintiff was never notified of the forfeiture and sale of the policy set out in the pleadings, and that no demand for the payment of the $800 note, or of the interest thereon, was ever made on him; that he did not know of said sale and forfeiture, or of any default made in the payment of the interest on said note, until after the ⸢death of Mrs. Caldwell. And the court held that, for said reasons and on other grounds, the said forfeiture and sale of said policy should be set aside in equity, and that the plaintiff should recover of defendant the amount of said policy with interest from July 5, 1897, and $65.78, the estimated dividends thereon from July 7, 1894, to February 5, 1897, the total amount being $2,169.06; and that defendant should recover from plaintiff the sum of $800 with interest at

eight per cent. from April 12, 1894, less $23 paid May 11,1895, total $1,006.40, and that judgment should be rendered for plaintiff for $2,169.06, less $1,006.40, or the sum of $1,162.66.

Such other facts as are necessary will be stated in the opinion.

*Jesse Turner*, for appellant.

The collateral promissory note and the power to sell, granted therein, were valid. Colebrooke, Coll. Secur. §§ 118, 119c.; 18 Am. & Eng. Enc. Law, 672; 32 Ark. 742. Demand and notice are not necessary where, by a contract of pledge, a power of sale is given upon default in payment of the principal debt at a definite time. Colebrooke, Coll. Secur. § 122; 18 Am. & Eng. Enc. Law, 670; 32 Ark. 742. The stipulation in the note that, on default of any interest payment, the principal might be declared due and payable, does not constitute a penalty, and is enforceable in law or equity. Pom. Eq. Jur. § 439; 8 Am. & Eng. Enc. Law, 450. The giving of the promissory note by appellee's intestate was *prima facie* evidence that there had been an accounting between the parties, and that the amount set out in the note was the amount found due by the maker. Dan. Neg. Inst. § 71; 28 Ark. 66; 8 Ark. 213. The assured was bound by the by-laws and rules of the association, and hence by its custom as to the application of dividends to the the purchase of new insurance. Joyce, Ins. §§ 318, 367, 3824; 82 N. Y. 543. Appellant did not, by accepting and crediting the $23, waive its rights under said collateral promissory note. 1 Pom. Eq. Jur. 439; 2 Joyce, Ins. §§ 1114, 1179, 1185, 1186; 49 N. Y. 449; 14 N. E. 466; 3 Cow. 230; 45 S. W. 539; 11 Am. & Eng. Enc. Law, 310. The sale under the power granted in the note was not a "forfeiture, and will not be annulled in equity on that ground. 8 Am. & Eng. Enc. Law, 447, 449; Joyce, Ins. §§ 1103, 1104–1114; Pom. Eq. Jur. § 439; 49 N. Y. 448; 53 N. Y. 508; 104 U. S. 88; 104 U. S. 252; 93 U. S. 24; 82 N. Y. 543. Appellee was a joint maker in the note, and is estopped to say that he stood in any other relation. 24 Am. & Eng. Enc. Law, 718; 54 Ark. 97. Demand did not have to be alleged. 3 Ark.

402; 4 Ark. 592. Appellee, being a joint maker, was not entitled to presentation, demand or protest. 40 Ark. 545.

*Hill & Brizzolara,* for appellee.

The insured had a right to have the dividends applied to the payment of interest due, in order to prevent a forfeiture. 80 Ill. 410; 93 Ind. 7; 97 Pa. St. 15; 100 Pa. St. 172; 39 Wis. 397; 82 Ky. 269; 1 Bidd. Ins. § 363; 73 Ky. 310. Notice of dividends must be given. 93 Ind. 7; 106 U. S. 30; 44 Oh. St. 156; 75 Ill. 426; 65 N. H. 27. The beneficiary (appellee) was entitled to notice of the dividend. 44 Oh. St. 156; 2 May, Ins. §§ 399, 6 N. E. 268. The waiver of notice of sale is not a waiver of the demand of payment. 2 N. Y. 445; 12 Wis. 465. The forfeiture was waived. 80 Ill. 410; 2 Joyce, Ins. § 1376; 47 Mo. 406; 30 Ia. 133; 30 Oh. St. 441; 1 Joyce, Ins. § 542. For application of doctrine that forfeitures are not favored in insurance cases, see: 80 Ill. 410; 93 Ind. 7· 82 Ky. 269; 97 Pa. St. 15; 73 Ky. 310;· 65 N. H. 27; 75 Ill. 426; 30 Oh. St. 240; 47 Mo. 407. Where power is given a pledgee to sell a pledge, the relation of the parties becomes analagous to that of trustee and *cestui que trust,* and the power will be construed most favorably to the pledgor,so far as possible. Coleb.Coll. Secur. §§ 118, 332; 93 Ill. 458; 32 Ark. 56; 32 Ark. 742, 748, Denis, Pledges, §§ 311–3, 466; 2 N. Y. 443. Hence, no forfeiture was authorized, because only a part, and not a whole, "installment" of interest was due. The note was only *prima facie* evidence of the amount due. 1 Dan. Neg. Inst. § 71. The facts in this case make out a clear case of attempted enforcement of a forfeiture. 106 U. S. 47; 7 Pa. Ch. 179; 36 Mich. 160, 169.

*Jesse Turner,* for appellant, in reply.

There was a breach of the condition in the collateral note, by non-payment of interest. The assured had not paid said interest in any manner, because: (a) No credit was due her for interest upon dividends. 100 Pa. St. 182. (b) No credit was due her on said interest by reason of the dividend of July 7, 1894, because the interest was not due until nine months after the declaration of the dividend, and the company had, in

the meantime, in pursuance of its usual custom, used said dividend in the purchase of new insurance. The clause in the policy making the interest a charge on the policy "until paid or conceled by profits or otherwise" leaves it optional whether the interest be so settled or "otherwise." But under the new contract the interest was payable in cash. On the question of application of dividends, see: 73 Ky. 310; 80 Ill. 410; 93 Ind. 7; 97 Pa. St. 15; 39 Wis. 397. (c) Until a dividend is actually *declared*, no stockholder could demand that he be credited with it or any part of it. 100 Pa. St. 172. (d) Even with credit allowed for the dividend, a balance of the interest remained due; and this authorized a forfeiture. The stipulation for the acceleration in the time of payment was not a *penalty*. Pom. Eq. §§ 436, 439. Under the agreement in the note, appellant had the right to purchase at its own sale. 55 Ark. 268; 21 S. W. 469; 32 Am. St. 704; 70 Mo. 290; 84 Me. 72.

*Hill & Brizzolara*, for appellee, in reply.

While statute law of another state must be proved by the printed statute itself, the *common law, usages* and *practice of the courts* may be proved by those acquainted therewith. 11 Ark. 157; 17 Ark. 154; 33 Ark. 645; 43 Ark. 209.

WOOD, J., (after stating the facts.) 1. The policy under which the premium loans accrued was an Ohio contract, and the rule prevailing there for the computation of interest, when the contract was executed, is applicable. It was shown that Ohio had no statutory rule upon the subject. It was, therefore, proper to prove the unwritten law, custom, usage, or practice obtaining in Ohio upon the subject by one skilled in or familiar with it. *Burkman* v. *Hopkins*, 11 Ark. 157; *McNeill* v. *Arnold*, 17 Ark. 154; *Bowles* v. *Eddy*, 33 Ark. 645; *Blackwell* v. *Glass*, 43 Ark. 209. Taking the figures furnished by the secretary of the company, and applying the Ohio rule for the calculation of interest, we have the following result:

Loan July 7, 1869 ............................$ 63.00
Interest July 7, 1869, to July 7, 1871, two years..... 7.56
Loan July 7, 1870 ............................. 63.00
Interest on same to July 7, 1871, one year......... 3.78

$137.34

Less credit by dividend .........................$ 16.88

      Balance due July 7, 1871 ...............$120.46

Loan ......................................... 63.00

                               $183.46

Interest July 7, 1871, to July 7, 1872, 6 per cent ..... 11.01

                               $194.47

Less credit by dividend ......................... 14.89

                               $179.58

Loan ......................................... 63.00

                               $242.58

Interest July 7, 1872, to July 7, 1873............. 14.55

                               $257.13

Credit by dividend ............................. 20.82

                               $236.31

Loan ......................................... 63.00

                               $299.31

Interest July 7, 1873, to April 12, 1894, twenty years,

   nine months, five days, at 6 per cent........... 372.89

                               $672.20

Less dividends ................................. 276.31

      Due April 12, 1894....................$395.89

    This calculation does not allow interest on dividends. No interest should be allowed on these, because until declared they were not due the company, and when declared they were applied on the principal. But the amount of premium loans for which the note was executed was $487.80, which amount, it appears from the figures given by the secretary of the company, was ascertained as follows: In the years where the annual interest on the principal exceeded the dividend for those years, the excess was added to the original principal, and interest computed on this new principal for the next year, and so continued until the result ($487.80) was reached. This was the reverse of the rule that obtained in Ohio; for Mr. Mechem says: "If there was a partial payment made, and it was less than the amount of interest at the time it was made, it would not affect the principal. The principal would go on drawing its rate of interest." And interest on the principal would not itself draw

interest from year to year because no time was fixed for the principal to mature. The contract was "until paid by profits or otherwise." So, according to the most liberal calculation that could legally be made for the company, Mrs. Caldwell, at the time the note was executed, owed it on premium loans $395.89, instead of $487.80. The difference, $91.91, represents the amount of cash which she should have received in addition to the $312.20 in order to have made the cash and premium loans, for both of which the note was executed, equal to the consideration named of $800. Can the appellee claim the benefit of this $91.91 in this proceeding? Proof of the giving of a promissory note by one person to another, without anything else appearing, is *prima facie* evidence of an accounting and settlement of all demands between the parties, and that the maker at the date of the note was indebted to the payee upon such settlement to the amount of such note. But this is a mere presumption, which may be repelled by proofs of the consideration of such note, and the occasion for and circumstances attending the giving of same." 1 Dan. Neg. Ins. § 71; *Costar* v. *Davies*, 8 Ark. 213; *Carlton* v. *Buckner*, 28 Ark. 66. Now, the occasion for and the circumstances attending the execution of this note show that the intention of Mrs. Caldwell, primarily, at least, was to obtain an additional loan on her policy to that which she already had. As incidental to this, she, by signing the note, indicated that she was willing to acknowledge her indebtedness for the loans which had already accrued, and to pay an increased interest on same. The company rendered a general statement of the amount of such loans, without itemizing or disclosing the methods by which it was ascertained. She had no access to the books of the company. The company had once before (July 1873), when her policy became a paid-up policy, indorsed upon the same total loan against the policy at that time of $299.63, showing substantially the correct amount, as per calculation *supra*. Mrs. Caldwell had the right to suppose that the same method of calculation was used in arriving at the amount which had accrued in the succeeding years. No statement of the amount of dividends for all those years from 1873 to 1894 was

rendered her. She had no notice of a change in methods of calculation, by which a different amount was shown on the books of the company to be due in 1873 than that indorsed on her policy.

This is not like the case where there are disputed matters of account between parties, and a note is given to evidence the settlement of such account. The company was purporting to claim only that which was due, and Mrs. Caldwell was proposing to promise to pay only that. The company was not proposing to charge her a bonus for the additional loan. If so, it did not reveal the matter to Mrs. Caldwell. The company was representing that $487.80 was the true amount of the premium loans due, and Mrs. Caldwell, without knowing, or having the means of ascertaining, accepted that as the correct amount. But it turns out that, by an erroneous method of calculation, compounding interest, she was charged $91.91 more than she owed, which was carried into the note and collected by the company. It is unimportant to consider whether the mistake was wilful or occasioned by ignorance or inadvertance. It was a mistake for which the company, and not Mrs. Caldwell, was responsible, and she cannot be held to have acquiesced therein by merely signing the note. Acquiescence implies a knowledge of the facts.

Then how stood the account between them April 12, 1895, when the first installment of interest was due? At that time Mrs. Caldwell was due the company $64 interest, and the company was due her $91.91, and also $18.34 dividend declared July 7, 1894. For the alleged default in the payment of this interest, the company proceeded to declare the whole amount of $800 due under the contract, and sold the policy having a cash value of $380 more than the amount of the debt, and closed up the account between them. Appellee shows that he had no notice of the proceeding until the death of his mother. Equity will not permit a forfeiture of his rights under the policy. To do so, under the circumstances, would be rank injustice.

But, to entitle him to the relief sought, it is insisted that he should have manifested a disposition to do equity himself by

seeking earlier to undo that which had already been done, and making a tender of the amount due. Mrs. Caldwell died February 5, 1897, and the suit was begun in March following. The suit was begun in apt time. The correspondence shows that, after the sale, a tender of less than the full amount of the principal and interest would not have been accepted; and even this amount would not have been accepted unless accompanied by a certificate of good health. A tender does not have to be made where it is made clear beforehand that if made it would be rejected. *Manhattan Life Ins. Co.* v. *Smith*, 44 Ohio St. 170.

But, if there was no breach of the contract, no tender of any amount was necessary. In April, 1896, Mrs. Caldwell owed $64 interest. After paying the interest of 1895 out of the $91.91 and the $18.34 dividend, she would have a balance to her credit with the company of $46.25, and in May, 1895, she had paid the company $23 cash. These sums make $69.25, leaving an excess of $5.25 due her after paying the interest of April 12, 1896. So that there was no failure to pay the interest due April 12, 1896, and there could have been no breach of the contract at that time if it was proper to apply the declared dividend to the payment of interest on the loan note. This brings us to consider that question.

2. The company was a mutual company. The policy provides that the assured should participate in the profits. A by-law of the company shows that dividends were to be ascertained and declared yearly. The proof shows this was done. There is a clause in the policy to the effect that the premium loans "are a just indebtedness against this policy until paid or cancelled by profits or otherwise." The secretary testified "that the policy, application, and the loan note evidenced the contract relations between Mrs. Caldwell and defendant. This was true in law, as well as fact. The giving of the note for the premium loans did not abrogate the provision of the policy, "until paid or cancelled by profits or otherwise." There is no provision of the note in conflict with this clause of the policy. The giving of the note was not in any sense a payment of the premium loans. These would not be paid until the note itself

was paid. The note was but the receipt, *pro tanto*, for the premium loans already had, or an acknowledgment, in a new and different form, of an indebtedness to the company for premium loans, and the additional loan in cash. We think, therefore, that the assured may very well insist that the policy itself contained an express direction that the profits or dividends should go to pay the premium loans. Of course, if we are right about this, equity would compel the application of the dividends to the interest to prevent a forfeiture of the rights of the beneficiary under the policy.

But, if we concede that the policy is silent as to the application of dividends to premium loans, equity would still compel their application in this case to the payment of the interest on the note. This, too, notwithstanding the "uniform practice and custom of the company to use the dividends to increase the policy, unless requested or directed by the assured to apply otherwise."

The proof showed that the assured had the right to have the dividends applied otherwise. In the absence of any stipulation in the policy, and of any directions otherwise by the assured as to the application of dividends which have been declared, it is the duty of a mutual company to apply such dividends to the payment of interest on loans made on the policy, when by so doing a forfeiture of all rights and benefits under the policy will be prevented. This is the rule in the case of premiums to keep the policy in force from year to year, and, of course, would be for the payment of interest on an ordinary loan, which prevents a sale of the policy. *Chicago Life Ins. Co.* v. *Warner*, 80 Ill. 410; *Franklin Life Ins. Co.* v. *Wallace*, 93 Ind. 7; *Girard Life Ins. &c. Co.* v. *Mutual Life Ins. Co.* 97 Pa. St. 15; *Mutual Life Ins. Co.* v. *Girard Life Ins. &c. Co.* 100 Pa. St. 172; *Hull* v. *Northwestern Mut. Life Ins. Co.* 39 Wis. 397; *Northwestern Mut. Life Ins. Co.* v. *Fort*, 82 Ky. 269; *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30; *Manhattan Life Ins. Co.* v. *Smith*, 44 Ohio St. 156; *Home Life Ins. Co.* v. *Pierce*, 75 Ill. 426; *Eddy* v. *Phœnix Ins. Co.* 65 N. H. 27; *Smith* v. *St. Louis Mut. Life Ins. Co.* 2 Tenn. Ch. 727; *Van Norman* v. *Ins. Co.* 51 Minn. 57; 1 Biddle, Ins. § 363; 2 May,

Ins. §§ 345a, 572; 2 Joyce, Ins. §§ 1166, 1235; 2 Bacon, Ben. Soc. & Life Ins. § 365; 1 Beach, Ins. §§ 117, 118.

Most of the above cases are cited in the brief of counsel for the appellee. The learned counsel for appellant says: "These cases all arise under very different facts from those existing in the case at bar, and these differences are so vital and essential in their nature as to make them valueless as authorities." We will not review them here. But in our opinion the difference in the facts does not destroy the application or lessen the efficacy of the principle. It is true that in some of them there was a contract, custom or course of dealing. But because insurance companies enter upon contracts or establish a usage in conformity to the doctrine above announced, from which they have not been allowed to deviate, does not prove the unsoundness of the doctrine itself, but, rather, the contrary. The doctrine does not arise out of the peculiar facts of any particular case. It does not depend upon contract, custom or course of dealing for its existence and potency. It has its origin in that fundamental principle of justice which will compel one who has funds in his hands belonging to another, which may be used, to use such funds, if at all, for the benefit, and not to the injury, of the owner; for his consent to the one, and dissent to the other, will be presumed. The language of Judge Cooper in *Smith* v. *Ins. Co.*, *supra*, is pertinent here: " I am of the opinion," says he, "that the company was bound, upon the plainest principle of equity, to apply the dividend first in such manner as to save the forfeiture. *The usage of the company in deducting the dividends from the principal in cases where the insured elects to continue the policy, even if uniform and unvarying, cannot control where the insured ceases to pay, and the contract is silent as to what should be done with the dividend. The law, which tempers justice with mercy, makes the proper application.* * * * *The dividend, as the property of the insured, should be applied to what he is bound to pay — the interest.*"

3. The authorities also establish the rule that it is the duty of the company, before taking a forfeiture for default in the payment of a maturing obligation, to notify the assured or

beneficiary of the amount of declared dividends where such dividends are insufficient to meet the obligation. See some of cases, *supra*. These principles are founded upon reason and common fairness and honesty, and they will have application wherever it becomes necessary to prevent a forfeiture, which is favored neither at law nor in equity. See following cases cited in appellee's brief where the doctrine that forfeitures are not favored is applied to insurance cases: *Chicago Life Ins. Co.* v. *Warner*, 80 Ill. 410; *Franklin Life Ins. Co.* v. *Wallace*, 93 Ind. 7; *Northwestern Mut. Life Ins. Co.* v. *Fort*, 82 Ky. 269; *Girard Life Ins. &c. Co.* v. *Mutual Life Ins. Co.* 97 Pa. St. 15; *St. Louis Mut. Life Ins. Co.* v. *Grigsby*, 73 Ky. 310; *Eddy* v. *Phœnix Ins. Co.* 65 N. H. 27; *Home Life Ins. Co.* v. *Pierce*, 75 Ill. 426; *Mutual Life Ins. Co.* v. *French*, 30 Ohio St. 240; *Froelich* v. *Insurance Co.* 47 Mo. 407.

4. A more righteous application of these principles than to the case at bar would be difficult to conceive. For more than twenty years the uniform practice of the company under the policy had been to apply the dividends to the loan. The only statement of her account ever rendered showed that they had been so applied. If the giving of the note abrogated the provision of the policy requiring this to be done, then it left the parties without any contract upon the subject. How could Mrs. Caldwell know what had been the custom of the company except as to her own policy? The company does not bring home to her any knowledge of what its custom was. Only one dividend was declared after the note was signed and before the sale of the policy. She had no notice that the company would proceed differently under the policy from what it had done for all those years with reference to dividends. She would be justified in concluding that the company would do as it had done before—credit the loans with the dividends. She had no knowledge of what the dividend was. Without consulting her as to her wishes about her own money in its hands, the company, assuming to act for her, proceeds to make a contract with itself for increasing her policy and its own security. Leaving out of view for the moment the $91.91, which the company disputes, on April 12, 1895, the company had in its

hands $18.34 of dividends which belonged to Mrs. Caldwell. True, it claims it had appropriated this to the purchase of additional insurance. But this purchase was made of itself, and the whole matter was in its hands. It was a matter of book-keeping. When it saw that Mrs. Caldwell " had overlooked the items of premium loans," and understood, as its letter of May 25, 1895, indicates, that she was probably confused as to the amount of interest she ought to pay, what was its duty? Clearly to inform her of the true status of her account; to notify her that she had $18.34 to her credit which might be used, if she so elected, to pay interest on her note. Mrs. Caldwell paid to Yowell & Williams $23, and, it seems, notified the company that she had paid the interest, thus indicating that she thought that the interest would be $23. The company realized that she seemed to be in error and confusion about the matter. Under the circumstances, a notice to her of the amount of the declared dividends was imperatively demanded.

The clause of the contract providing for sale of the policy in case of non-performance of the stipulation for the payment of interest, making the whole debt due, etc., if not a forfeiture in the strict technical sense, certainly has that similitude, and should be treated accordingly. Pom. Eq. Jur. § 437; *Chicago & V. R. Co.* v. *Fosdick,* 106 U. S. 47; *Noyes* v. *Clark,* 7 Paige, 179; *Wilcox* v. *Allen,* 36 Mich. 160–169. A court of equity will relieve against the effect of such provision where the default of the debtor is the result of accident or mistake, and *a fortiori* when it is procured by the fraud or other inequitable or improper conduct of the creditor. 1 Pom. Eq. 439; 2 Jones on Mortgages, § 1185. No fraud is charged or proved. But the facts do show that the sale of the policy was compassed by a mistake of the appellant, and by conduct which was improper and inequitable, for which the sale should be set aside. We conclude, therefore, that there was no breach of the contract for failure to pay interest for the years 1895 and 1896. Hence there could have been no forfeiture for either of those years, and no tender was necessary.

Other interesting questions are elaborately presented in the excellent briefs of counsel. But we pretermit a discussion of

them, as it becomes unnecessary, in the view we have taken. The court made an allowance of $65.78 of dividends up to February 5, 1897. We have only taken into consideration the declared dividend July 7, 1894, and in rendering the decree for the amount due under the policy the dividends which should have been declared July 7, 1895 and 1896, should also be considered. The dividend estimated for 1895 was $18.72, and, considering that it would be the same for 1896, the total amount of these dividends would be $55.78 or a difference of $10. But this difference would be a little more than offset in the interest of $91.91 for one year which the company received the benefit of, and in the small balance that would have remained to her credit after the payment of the installments of interest which had accrued before the death of the assured.

The decree upon the whole is therefore correct, and is in all things affirmed.

BATTLE, J., dissenting