### PHŒNIX INSURANCE COMPANY *v.* DOSTER.

1. A case should not be withdrawn from the jury, unless the facts are undisputed, or the testimony is of such a conclusive character that a verdict in conflict therewith would be set aside.

2. Circumstances stated which estop a mutual life insurance company from setting up that the policy sued on was forfeited by the non-payment *ad diem* of the stipulated annual premium. *Insurance Company* v. *Norton*, 96 U. S. 234, and *Insurance Company* v. *Eggleston*, id. 572, approved.

3. Where that premium is, by the contract, subject to a deduction equal in amount to the dividends to which the assured is entitled, it is the duty of the company to give him such notice of that amount, that he may, in due time, pay or tender the balance of the premium.

ERROR to the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

*Mr. H. E. Barnard* for the plaintiff in error.

*Mr. John W. Lynn* and *Mr. Frank Doster* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a writ of error from a judgment for the amount of a policy of insurance upon the life of Jackson Riddle, issued on the twentieth day of September, 1871, by the Phœnix Mutual Life Insurance Company of Hartford, Connecticut.

The policy purports to have been issued in consideration as well of the representations made in the application for insurance, as of the payment by the wife and children of the insured (the payees named in the policy) of the sum of $215, and the annual payment of a like amount on or before the twentieth day of September in every year during its continuance. It contains a stipulation that if the premium be not paid at the office of the company in Hartford, or to some agent of the company producing a receipt signed by the president or secretary, on or before the day of its maturity, then, in every such case, the company shall not be liable for any part of the sum insured, and the policy shall cease and determine, all previous payments being forfeited to the company. The policy is upon the half-note plan, and it is part of the contract that the dividends set apart to the insured be applied in the discharge, *pro tanto*, of

annual premiums. The secretary of the company, in his evidence, states that under the half-note plan the insured is permitted to discharge one-half of the first four premiums by notes (the interest thereon to be paid in advance), and upon the fifth and subsequent payments, to have his dividends, if any, applied in reduction of the premium. It was in proof that prior to the maturity of the respective premiums, payable on the twentieth days of September, 1872, 1873, and 1874, the company's general agent sent to the insured, at his residence in Monticello, Ill., printed notices showing when the premium became due, the amount of cash to be paid, the interest on the notes given under the half-note plan, and the amount for which an additional note, under that plan, was required. Prior to the 20th of September, 1875, — when the fifth annual premium was due, — the notice to the insured stated the amount of dividends to be applied in reduction of that premium, the interest to be paid in advance upon the notes previously executed, and the sum to be paid in cash.

The amounts due in the years 1872, 1873, 1874, and 1875 were paid, but not until the expiration of several — in some instances ten or more — days after the time fixed by the policy. They were received, in each instance, so far as the record discloses, without objection upon the part of the company or its agents.

On the 6th of October, 1876, the insured lost his life in a railroad collision, leaving unpaid the premium due on the twentieth day of September of that year. His residence and post-office, for more than a year prior to his death, had been at Oxford, Ind. Of his removal to that place the general agent of the company at Chicago was distinctly informed, as the evidence tended to show, as early as October, 1875. The letter from that office acknowledging the receipt of the premium due on 20th September, 1875 (but not paid until about Oct. 9, of that year), was addressed to the insured, at his new residence in Oxford, Ind. On the fourth day of October, 1876, — fourteen days after the premium for that year was due, — there was sent from the office of the company's general agent at Chicago, addressed, by mistake, to the insured at Fowler, Ind., a notice similar to that given in 1875. This

notice, the evidence tended to show, was received from the post-office at Fowler, Ind. (where the father never resided), by a son of the insured, on the day the latter was killed, and a few hours only before his death. There was also proof that the insured, before leaving his home, at Oxford, Ind., made arrangements to pay the amount required in that year as soon as the customary notice, showing the sum to be paid, was received. On the ninth day of October, 1876, the amount due was, in behalf of the payees, tendered to the company's general agent at Chicago. He declined to receive it, upon the ground that the policy lapsed by reason of the non-payment of the premium, at maturity, in the lifetime of the insured.

Upon the part of the payees.it is contended that the company waived strict compliance with the provision making the continuance of the policy dependent upon the payment of the annual premium on the day named therein ; and that, in view of the settled course of business between the company and its agents on one side and the insured on the other, it is estopped to rely upon the non-payment of the last premium, at the day, as working a forfeiture of the policy.

The facts and circumstances established by the testimony are sufficiently indicated in the charge of the court, to certain parts of which, to be presently examined, the company objected. It is enough to say that the testimony was ample to enable each party to go to the jury upon the substantial issues in the case. The motion, at the close of the plaintiff's evidence, for a peremptory instruction for the company was properly denied. It could not have been allowed, without usurpation, upon the part of the court, of the functions of the jury. Where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions as to the principles of law involved. It should never be withdrawn from them, unless the testimony be of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it. *Greenleaf* v. *Birth*, 9 Pet. 292; *United States* v. *Laub*, 12 id. 1 ; *Bank of the Metropolis* v. *Guttschlick*, 14 id. 19 ; *Bevans* v. *United States*, 13 Wall. 56 ; *Hendrick* v. *Lindsay*, 93 U. S. 143.

We now proceed to an examination of those parts of the charge which were made the subject of exceptions by the company.

After saying that the policy, with the application, contained the agreement of the parties; that the clause providing for a forfeiture for non-payment of the premium at maturity, and declaring the want of authority in agents either to receive premiums after the time fixed for their payment, or to waive forfeitures, constituted a part of the contract, binding upon both parties unless waived or modified by the company or by its agent thereunto authorized; also, that strict performance of the forfeiture provision could be waived by the company, either expressly or by implication, — the court proceeded to lay down the rules by which the jury should be guided in determining whether there was such waiver. It said, in substance, that if the conduct of the company in its dealings with the insured and others similarly situated had been such as to induce a belief on his part that so much of the contract as provides for a forfeiture, if the premium be not paid at the day, would not be enforced if payment were made within a reasonable period thereafter, the company ought not, in common justice, to be permitted to allege such forfeiture against one who acted upon that belief, and subsequently made or tendered the payment; and that if the acts creating such belief were done by the agent and were subsequently approved by the company, either expressly, or by receiving and retaining the premiums, with full knowledge of the circumstances, the same consequences should follow.

The court further told the jury, in substance, that if they found from the evidence that the company was in the habit of sending renewal receipts for the premium on this policy to its local agent, at the place of residence of the insured, duly signed by the president and secretary of the company, leaving their use subject entirely to the judgment of that agent, and the latter was accustomed to receive the premiums from the insured, without objection, several days after the same became due, and to issue the receipt therefor, and the home company or the managing agents or officers had full knowledge of such practice, and received from its agent, and retained, the pre-

miums so paid, the insured had a right to believe that the company waived a strict compliance, and they might find that there was a waiver by the company of the forfeiting clause of the policy.; and if the insured, relying on such practice, within a reasonable or the usual time, paid or offered to pay the premium after the day the same was due, the policy remained in full force and effect, and the company was liable thereon, notwithstanding the insured had in the mean time died.

The objection of the company to these parts of the charge was overruled, and an exception taken. The objection would have more weight had the charge ended with these remarks, because in such a presentation of the case the court would have placed before the jury only one side of the issues to which it directed attention. But the charge is not liable to such criticism, since the court, in the same connection, instructed the jury that if the company had not authorized its local agent, to whom the renewal receipts were sent, to extend the time for payment of the premium beyond the day named in the policy, nor had habitually accepted from the insured through its agent the premiums on the policy after the same became due, with full knowledge that the same were so paid after due and the receipt issued by its agent, then that they could not find that the company had, either expressly or by implication, waived a strict compliance with the terms of the policy in reference to payment of the premiums, and the policy became forfeited according to its terms.

It seems to the court that the charge was as favorable to the company as it could have demanded. It was, as to its essential parts, in substantial harmony with recent decisions of this court. In *Insurance Company* v. *Norton*, 96 U. S. 234, we said, in reference to a policy, similar to the one here in suit, that the company was not bound to act upon the declaration that its agents had no power to make agreements or waive forfeitures, but might, at any time, at its option, give them such power; that the declaration was tantamount to a notice to the insured, which the company could waive and disregard at pleasure. "In either case," said the court, "both with regard to the forfeiture and to the powers of its agents, a waiver of the stipulation or notice would not be repugnant to the written

agreement, because it would only be the exercise of an option which the agreement left in it. And whether it did exercise such option or not, was a fact provable by parol evidence, as well as by writing, for the obvious reason that it could be done without writing." In the same case it was said that, although in life insurance time of payment was material, and could not be extended against the assent of the company, where such assent was given, the court should be liberal in construing the transaction in favor of avoiding a forfeiture. And in *Insurance Company* v. *Eggleston*, id. 572, it was said, that the courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Consequently, said the court, speaking by Mr. Justice Bradley : " Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture. The representations, declaration, or acts of an agent, contrary to the terms of the policy, of course, will not be sufficient, unless sanctioned by the company itself. *Insurance Company* v. *Mowry*, 96 U. S. 544. But when the latter has, by its course of action, ratified such declarations, representations, or acts, the case is very different." These authorities abundantly sustain the rulings in this case to which reference has been made.

The court below then passed to an examination of the remaining ground relied on as excusing the non-payment of the last premium on the day it fell due ; viz., the failure of the company to give the insured seasonable notice of the amount of dividends to be applied in reduction of the premium.

After stating that by the terms of the policy the premiums could be paid either at the home office or to an agent of the company, producing the proper receipt, and that by the terms of the application, which was the basis of the contract of insurance, the annual dividends due the insured could be applied in discharge of premiums, the court instructed the jury that if

they found from the evidence that it had been the invariable custom of the company to transmit to the insured, by mail or by its local agent, a statement of the amount of the premium due, after deducting the dividend, with a notice of the time when, the place where, and the person to whom, the premium could be paid, then the insured had good reason to expect and rely on such statement, and notice being sent to him ; and that if the insurance company, by its managing agent, had notice of the post-office address of the insured before the usual time of sending out notice, but failed and neglected to transmit such statement and notice to the insured at his post-office address until the fourth day of October, and the same did not reach him or the payees in the policy until October 6th, and that the insured or payees were ready and waiting to pay said premium when the notice and statement should be received, and by reason of such failure of the company to send the notice and statement, and by reason of that alone, the premium due in September, 1876, was not promptly paid ; and that in a reasonable time thereafter, to wit, on Monday, the ninth day of October, 1876, the payees tendered the company at Chicago the full amount of the premium due, then the policy did not lapse or become forfeited, notwithstanding the premium was not paid on the day named in the policy, and in the lifetime of the insured.

To that part of the charge the company excepted. In the same immediate connection the court below, it may be observed, further instructed the jury that if it had not been the uniform custom of the company to send the insured such notice and statement at or about the time the premium became due, or if the company or managing agent had not been notified of the change of the post-office address of the insured until about the fourth day of October, or that the company had in reality sent the notice, by mail or otherwise, at a prior date, properly addressed to the insured, then it was not the fault of the company that the insured was not notified, and the want of such notice would not excuse him from making payment at the day, and the policy would, consequently, become forfeited.

We are of opinion that these propositions are substantially correct. Nor do we perceive that the rulings of the court below

are in conflict with our decision in *Thompson* v. *Insurance Company*, 104 U. S. 252. In that case it appeared that the insured, for a part of an annual premium, had given a note containing the special provision that in the event of the non-payment of the note at maturity the policy should be void. The note was not paid at maturity, nor was payment ever tendered, while the insured was alive nor at any time after his death, by or in behalf of the payees in the policy. To pleas setting up these facts replications were filed, in which it was attempted to excuse the failure to make due tender of the amount of the note upon the ground that it was the usage and custom of the company, practised with the insured and others, as well before as after the making of the note, not to demand punctual payment at the day, but to give thirty days of grace; further, that it had been its uniform custom and usage, in advance of the maturity of notes, to give notice of the day of payment, whereas no such notice was given to Thompson, and thereby, it was alleged, he was put off his guard and misled as to the time of payment. It was held that the failure to tender the amount due, within the period named in the replication, was, in every view, fatal to the entire case set up by the payees in the policy. "A valid excuse for not paying promptly on the day is," said the court, "a different thing from an excuse for not paying at all." Touching the alleged failure of the company, in conformity with its uniform practice, to give notice of the day of payment, it was said that the insured knew, or was bound to know, when his premiums became due, and that the company was under no obligation to give him notice, nor did it assume any responsibility by giving notice on previous occasions.

The present case has features which plainly distinguish it from the Thompson case. In the former, there was a tender of the premium within a few days after the death of the insured, and as soon as the payees ascertained the sum required to be paid. In the latter, the amount to be paid was fixed. It was not liable to be reduced on account of dividends or for any other reason, and the insured, therefore, knew the exact amount to be paid in order to prevent a forfeiture of the policy. Now, although the policy issued upon Riddle's life required payment annually of a specific sum as a premium, that stipulation must

be construed in connection with the agreement set out in the
application, that the premium might be discharged *pro tanto*
by such dividends as were allowed to the insured from time to
time.   Whether the company, in any particular year, declared
dividends, and what amount was available in reduction of the
premium, were facts known, in the first instance, only to the
company, which had full control of the matter of dividends.
It certainly was not contemplated that the insured should
every year make application, either at the home office, or at
the office of its general agent in Chicago, in order to ascertain
the amount of dividends.   The understanding between the
parties upon this subject is, in part, shown by the practice of
the company.   Independently of that circumstance, and waiv-
ing any determination of the question whether the forfeiture
was not absolutely waived by the act of the general agent, in
sending notice to the insured after the day fixed for the pay-
ment of the premium due Sept. 20, 1876, it was, we think, the
company's duty, under any fair interpretation of its contract,
having received information as to the post-office of the insured,
to give seasonable notice of the amount of dividends, and thereby
inform him as to the cash to be paid in order to keep alive the
policy.   It did, as we have seen, give such notice in 1875, and
received payment of the amount due after the date fixed in the
policy.   Within a reasonable time after the notice for 1876
came, in due course of mail, to the hands of one of the payees,
a tender of the amount was made to the general agent at Chi-
cago.   No such features were disclosed in the Thompson case,
and they are, as we think, sufficient not only to distinguish the
present case from that one, but to authorize the instructions of
which the company complains.

The assignments of error bring to our attention numerous
exceptions taken by the company to the admission of evidence,
and to the refusal to give instructions asked in its behalf.   We
deem it unnecessary to consider them in detail.   So far as they
affect the substantial rights of the parties, they are disposed of
by what has been said touching the charge of the court upon
the essential questions in the case.

*Judgment affirmed.*