## WARTHEN *v.* HAMMOND.

### PLEADING AND PRACTICE; DIRECTING VERDICT.

Where in an action for goods sold and delivered, the plaintiff's testimony tends to show that the debt sued on was contracted by an authorized agent of the defendant for the defendant's use and benefit, and the defendant's testimony tends to show that the authority of the agent was limited to buying for cash only, it is error for the trial court to direct a verdict for the defendant, the general rule being that where the plaintiff has made out a *prima facie* case, and one which would entitle him to a verdict, in the absence of testimony in defense, the court cannot properly direct a verdict, no matter what the testimony of the defendant may be.

No. 368.  Submitted December 7, 1894.  Decided January 8, 1895.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed for the defendant.  *Reversed.*

The COURT in its opinion stated the case as follows:

The appellants, William J. Warthen and Richard C. Warthen, who are butchers, instituted suit in the Supreme Court of the District of Columbia, on open account, for meats to the value of $1,191.04, furnished by them during a period of about seven months, from January 8 to August 3, 1889, to a sanitarium or hospital near the city of Washington,

owned and operated by the appellee, William A. Hammond, upon the order of one Annie M. Rowland, matron of the institution, and claimed to have been the agent of the appellee duly authorized for the purpose, a claim denied or qualified by the appellee.

The testimony on behalf of the plaintiffs at the trial tended to show that Mrs. Rowland occupied the position of housekeeper and matron of the institution from the time of its being opened, about the 7th of January, 1889, to the end of July of that year; that she sent for the plaintiffs and requested them to furnish meats to the institution; and that, in pursuance of this direction, they did so furnish meats for the period above specified, to the aggregate value of $1,371, receiving in the meantime from Mrs. Rowland only three comparatively small payments, one of $25 on January 23, one of $20 on February 2, and one of $50 on March 12. The supplies were delivered daily, except Sunday, in a wagon bearing the name of the plaintiffs, each delivery being accompanied with a bill stating the whole amount furnished and the total cost. Orders for the meats were sometimes given by Mrs. Rowland at the market, to which she went in a conveyance owned by the defendant and driven by one of his servants; and sometimes were sent to the house of one of the plaintiffs, who resided near the sanitarium. The goods were delivered on credit; and it was testified on behalf of the plaintiffs that it was not unusual to give such credit under similar circumstances.

The authority of Mrs. Rowland to purchase the goods on the defendant's account, so far as the plaintiffs knew, was based upon her own statement made to them, upon their inquiry, two or three days after she had commenced dealing with them, to the effect that she did have such authority. No written evidence of agency was ever exhibited by her; and the plaintiffs never made any inquiry of the defendant personally, to ascertain the truth of the statement. On one occasion, when they requested of Mrs. Rowland payment

of their bill, she put them off with the statement that the appellee was very busy, could not be seen, had trouble with his architect, but was a man of honor, and would pay them.

It appeared further by proof, on both sides, that Mrs. Rowland was the matron and housekeeper of the sanitarium; that she employed and discharged the servants; and that she was charged with the duty of purchasing all the supplies for the table and of doing the marketing. She seems also to have made other purchases than those from the plaintiffs, on credit, all of which, except one, were afterwards paid for by her. And it was stated that she frequently complained of the inadequacy of the amount of money placed at her disposal to supply the table.

On behalf of the appellee, defendant in the court below, the testimony was, in substance, that he had employed Mrs. Rowland as matron and housekeeper of his sanitarium, and to purchase the provisions and do the marketing; that she had assured him that she "could give excellent fare, so far as marketing went, for $3.50 per week per patient;" that he agreed to this, although at the time he did not think it was enough, but changed his mind about it afterwards, and that she was thereupon charged "to purchase all the eatables for the establishment, but on no account was she to contract a single debt of any kind whatever," an injunction which he says he " was particularly imperative in enforcing upon her." The defendant stated, also, that the arrangement was that Mrs. Rowland was to get her money the first of every week approximately from the number of patients to be there that week, and if she found that she required any more, she was to come to him and get it; and that about half the weeks she did come for more money, and always received what she asked for. If there was a surplus, she was to turn that in to the physician in charge; and he believed that once there was such a surplus turned in.

Upon cross-examination of the defendant, it was developed that he had given to Mrs. Rowland during the whole time

of her stay in the institution, which was from January 6 to July 30, 1889, the sum total of $1,865 in money, groceries to the value of $197, and $15 additional for some purpose not stated. A tabulated statement was exhibited showing the specific payments that were made and the days on which they were made, and showing also the number of patients in the institution from week to week during the period of Mrs. Rowland's occupancy of the position of matron and housekeeper. This statement was introduced by the plaintiffs to show that there was no fixed relation between the number of patients and the amount of money advanced to Mrs. Rowland, and thereby to discredit the statement in regard to the arrangement for $3.50 a week per patient.

There was some further testimony on behalf of the defendant, mainly of a corroborative character, which it does not seem to be necessary to specify here.

As already stated, Mrs. Rowland became matron of the institution at its opening, about January 7, 1889, at which time her transactions with the plaintiffs began, and she left on July 30, 1889. During that whole time the plaintiffs were engaged from day to day in the delivery of the goods for which they bring this suit. They continued the delivery for three days after the departure of Mrs. Rowland, namely, on August 1, 2, and 3, as testified by one of the plaintiffs, upon orders from the institution, although he did not know who gave the orders. Dr. Tompkins, the physician in charge of the institution, testified on behalf of the defendant that he (Tompkins) had given the order for the goods delivered on the 3d of August. The goods delivered on this last mentioned day were of the value of $16.79. Those for the whole three days of August were of the value of $34.05.

Upon this condition of the testimony, the trial court, over the objection of the plaintiff, peremptorily instructed the jury that the plaintiffs were not entitled to recover any part of their bill except the items furnished on the 3d of August,

and the verdict of the jury was rendered for the plaintiffs for the sum of $16.79. To this ruling the plaintiffs excepted, and the case is now here on that exception.

*Mr. J. J. Darlington* for the appellants.

*Mr. Samuel Maddox* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In one respect, at all events, we must hold the ruling of the court below to have been erroneous. There seems to be no good reason why the jury should not have been permitted to pass upon the claim of the plaintiffs for the goods furnished by them on the 1st and 2d of August, as well as for those furnished on the 3d. Mrs. Rowland had left the institution on the 30th of July, and the testimony on behalf of the plaintiffs was "that the goods ordered on the 1st, 2d, and 3d of August were not ordered by Mrs. Rowland, but were ordered from the sanitarium after he (the witness, William T. Warthen) had heard that Mrs. Rowland had left, though he did not know by whom ordered." The testimony of the defendant in the case, after he had stated that Dr. Tompkins had general charge of the institution, was, in reference to this point, as follows: "I ordered meat from Warthen once after Mrs. Rowland went away. This was on Saturday, August 3d. I went down to inquire where the meat had been purchased, and they told me from Warthen. I then gave orders to get enough to last until we got a new housekeeper. After I knew of Mrs. Rowland having a bill there, nothing was ordered from Warthen." There is no pretense on the part of the defendant that the goods claimed by the plaintiffs to have been ordered from the sanitarium after Mrs. Rowland's departure, and to have been delivered by them on the 1st and 2d of August, were not actually received and used in the institution, and under the circumstances, it was not proper to exclude the claim for the value of these goods from the consideration of the jury.

But this constitutes only a small and comparatively unimportant part of the subject of controversy between the parties. The main question presented to us for determination is, not whether the plaintiffs should recover from the defendant any part or the whole of their claim, but whether there was anything developed by the testimony in the cause which should have been submitted to the jury for their consideration and verdict.

We regard it as a sound and salutary rule of practice that a trial court may withdraw a case from the consideration of a jury, or what amounts to the same thing in our practice, may peremptorily direct a verdict for one or other party to a suit in clear cases, where the evidence, with all just inferences that might be drawn from it, would be insufficient to support a contrary verdict ; and a trial court should not hesitate to exercise its right so to do, especially in cases in which, as we know by common experience, passion and prejudice are apt to supply, in the estimation of jurors, the absence or deficiency of proof.

It was said by the Supreme Court of the United States, by Mr. Justice Gray, in the case of *Randall* v. *Baltimore and Ohio Railroad Company*, 109 U. S. 478, following numerous precedents, " that when the evidence given at the trial, with all inferences that a jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict, if rendered, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." And, on the other hand, the converse of this proposition is well stated by Mr. Justice Harlan, speaking for the same high tribunal, in the case of *Phœnix Insurance Co.* v. *Doster*, 106 U. S. 30, as follows : " Where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions as to the principles of law involved. It should never be withdrawn from them unless the testimony be of such conclusive character as to compel

the court, in the exercise of a sound judicial discretion, to set aside a verdict rendered in opposition to it."

Both of these rules are reaffirmed in the case of *Goodlett* v. *Louisville and Nashville Railroad Company*, 122 U. S. 391, 411, in an opinion by Mr. Justice Harlan. And in the more recent case of *Richmond and Danville Railroad Company* v. *Powers*, 149 U. S. 43, the same doctrine is again announced in an opinion by Mr. Justice Brewer, although in that case, with reference to the question of negligence, it is there said : " It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair minded men will honestly draw different conclusions from them."

It has sometimes been said, and the statement is not an unfair inference from certain general expressions in some of the cases, that, whenever the trial court would set aside the verdict of a jury, when rendered, it 'may in advance direct a verdict to the contrary. But this undoubtedly states the rule too broadly. For it is not only the right, but often the duty, of a trial court, in the interests of justice, to vacate a verdict when the court is satisfied that the preponderance of evidence is against the verdict; and its action in such regard is matter of sound discretion, not to be revised on appeal by a purely appellate tribunal. And yet, though the trial court may, and often should, set aside a verdict on the ground of the preponderance of evidence being against it, and again remit the issue to a jury, it is not for that reason authorized in the first instance to direct a verdict for the party in whose favor it regards the evidence as preponderating. Where there is testimony of a substantial character to go to the jury, it is always for the jury to determine the question of the preponderance of evidence, subject to the revisory power of the court to order a retrial.

Is there substantial testimony in the present case that should be submitted to a jury?  Or, in the language of the Supreme Court, in one of the cases that have been cited, is the testimony "of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it?"  The question is not whether the testimony preponderates in favor of one party or the other, which it is the province of the jury under our law to determine; but whether there is any substantial evidence on the part of the plaintiff that should be submitted to a jury.

We presume it may be laid down as a general rule, subject perhaps to some exceptions or qualifications, that when the plaintiff has adduced testimony fairly tending to prove a *prima facie* case in his favor, and which, in the absence of testimony on behalf of the defendant, would entitle him to solicit a verdict from the jury, the court may not withdraw his case from the consideration of the jury, no matter what the testimony for the defendant may be.  Now, there is here testimony on behalf of the plaintiffs that the alleged indebtedness for which they seek to recover was contracted by an authorized agent of the defendant for the use and benefit of the defendant.  If there was any doubt from this testimony as to the agency, the doubt was removed by the testimony of the defendant himself, when he said : "She was to purchase the provisions and do the marketing;  .  .  . she was to purchase all the provisions for the establishment." But even the testimony for the plaintiffs, although more feebly, tended to prove the same fact.  That the goods were contracted for by the agent so constituted, and were delivered and used at the defendant's institution, is unquestioned ; as is likewise the fact that the prices charged for them are fair. And there is likewise testimony tending to show that it was not unusual, under similar circumstances, to deliver goods of the same character upon credit.  All this, if uncontroverted, would have justified the plaintiffs in asking a ver-

dict from the jury; and a verdict so rendered could not reasonably be held to be unjust and wholly without foundation. The testimony might be regarded as weak and insufficient; but it cannot properly be said that, as matter of law, it would not justify a verdict.

The limitation upon the agency, that the agent should purchase for cash, and not upon credit, was matter of defense. It was brought out only in the testimony for the defendant. If true, it ought, perhaps, to defeat the plaintiff's claim; for it would be intolerable that a man should be held liable for an indebtedness which he not only never authorized, but actually prohibited—although as against a general agency a secret inhibition should not, of course, prevail. But the plaintiffs are entitled to controvert before the jury the truth and sufficiency of that defense; and it is not for the court to say peremptorily that the defense has been established, and thereupon to direct a verdict.

We do not deem it necessary to follow counsel in their able and elaborate arguments upon the subject of agency, or to review the authorities which they cite, conflicting as some of them apparently are. If the case had been submitted to the jury upon instructions applicable to it, the propriety of such instructions might have warranted an extended investigation by us of the questions that have been discussed in argument. Those questions do not seem to us now to require determination, and we cannot anticipate that they will be presented in a new trial. On the record, as now presented, the only question before us is, whether the plaintiffs, in their testimony, had made out a *prima facie* case for the jury, or whether there was testimony in the case upon which they might reasonably have asked for the verdict of the jury. Regardless whether it was sufficient or insufficient, we think there was such testimony; and we think it was error to have taken away that testimony from the consideration of the jury.

We must, therefore, *reverse the judgment of the court below,*

*with costs; and remand the cause to that court, with directions to set aside the verdict and to award a new trial. And it is so ordered.*