## REED v. BANKERS' RESERVE LIFE INS. CO.

(Circuit Court, E. D. Washington, E. D. November 6, 1911.)

### No. 1,582.

1. INSURANCE (§ 349*)—LIFE INSURANCE—CONSTRUCTION OF POLICY—TIME FOR PAYMENT OF PREMIUMS.

A provision of a life insurance policy, giving the insured a month of grace for payment of each annual premium, after it becomes due by the terms of the policy, does not apply to notes given for a past-due premium, after the month of grace for payment of such premium has expired.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 897; Dec. Dig. § 349.*]

2. INSURANCE (§ 349*)—FORFEITURE—NONPAYMENT OF PREMIUM.

Under the rule of the federal courts, failure to pay at maturity a note given for a past-due premium on a life insurance policy, containing a provision for forfeiture in such case, works an absolute forfeiture of the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 897; Dec. Dig. § 349.*]

3. INSURANCE (§ 310*)—FORFEITURE—NONPAYMENT OF PREMIUM—WAIVER.

Where a premium on a life insurance policy is by the contract subject to a deduction equal in amount to a dividend to which the insured is entitled, it is the duty of the company to give him notice of such amount a reasonable time before the premium is due, and failure to give such notice is a waiver of the right to declare a forfeiture for nonpayment.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 703; Dec. Dig. § 310.*

Notice of premiums, dues, and assessments, see note to Ferrenbach v. Mutual Reserve Fund Life Ass'n, 59 C. C. A. 317.]

At Law. Action by Alice Reed against the Bankers' Reserve Life Insurance Company. On demurrer to complaint. Overruled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

John M. Gleason, for plaintiff.
Cain & Macdonald, for defendant.

RUDKIN, District Judge. This is an action on a life insurance policy. The policy provides that:

"In consideration of the application for this policy, which is hereby made a part of this contract, and for an advance premium of one hundred dollars and no cents, to be actually paid in cash on or before the delivery hereof for one year's insurance from date of this contract, and upon condition of the further payment in advance of a like amount on or before the 5th day of the month of August in each succeeding year during the continuance of this policy, or until twenty years' premiums have been paid, hereby insure the life of Mary B. Kirkendall, of Spokane, county of Spokane, state of Washington, in the sum of twenty-five hundred dollars, and, upon receipt of due proof of death of said insured, while this policy is in full force, promise to pay in gold coin of the United States of the present standard of weight and fineness at its home office in the city of Omaha, to Ethel Reed, her niece, if living, or, if not living, then to the executors, administrators, or assigns of said insured, the said sum insured, after deducting therefrom the balance of current year's premium, and any indebtedness of the insured to the company."

Numerous provisions and conditions attached to the policy are made a part of the contract of insurance, the following of which are deemed material:

"The insured may, at any time during the continuance of the policy, provided such policy has not been assigned, change the beneficiary upon written request to the home office of the company, together with a surrender of the policy."

"Premiums hereon after the first are due and payable in advance, either at the home office or to an agent of the company, upon delivery of a receipt signed by the president, secretary, or treasurer."

"Except as herein otherwise provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

"A grace of one month, subject to an interest charge at the rate of six per centum per annum, shall be granted for payment of every premium after the first, during which month the insurance shall continue in force."

"This policy is based upon premiums payable annually, in advance, but, upon written notice to the company, the insured shall have the option at the time any premium falls due of paying an annual, semiannual, or quarterly premium, according to the company's schedule for this kind of policy, and the same will continue this policy in force for the time paid for, the receipt for which must be signed as aforesaid."

"This policy may be reinstated within three years from default in the payment of any premium hereon, upon proof of good health satisfactory to the company and the payment of all defaulted premiums, with interest thereon at the rate of six per cent. per annum. This privilege shall not apply if the policy has been surrendered to the company for its cash surrender value and been canceled."

"January 1, 1909, and annually thereafter for nineteen years, provided this policy is then and has been in force not less than one year, the insured shall be accredited with a dividend from the company's expense fund upon the following basis: A dividend fund shall be accredited annually for 20 years beginning January 1, 1909, and shall consist of and be computed at the rate of $1.00 per $1,000 on all insurance then in force written in the state of Washington by this company within 10 years after January 1, 1908. The amount of such dividend shall be the insured's pro rata share of said fund in the same proportion that the amount of this policy bears to the total amount of Washington increasing dividend policies then in force in which such dividends have matured."

On the 10th day of August, 1909, the plaintiff in this action was substituted as beneficiary in the mode prescribed in the policy. The premium due and payable on the 5th day of August, 1910, was not paid at maturity,' nor' within the one month's grace allowed by the contract. On the 8th day of October, 1910, the insured, Mary B. Kirkendall, executed and delivered to the company her three certain promissory notes, for the sum of $25, $35, and $21.40, payable on or before the 8th day of January, 1911, on the 8th day of March, 1911, and on the 1st day of May, 1911, respectively, for the premium due on the 5th day of August, 1910. Each of these notes contained the following provision:

"If this note is not paid at maturity, policy No. 12131 issued by the Bankers' Reserve Life Company, of Omaha, Nebraska, for which it is given, shall be ipso facto null and void, without notice to the maker hereof, and without any act on the part of the company, and shall remain so until restored as provided by the terms of said policy."

On the 13th day of October, 1910, the company acknowledged receipt of the above notes in the following letter:

"We are in receipt of notes, together with health certificate, covering the premium on your policy #12131 for current year, which was due August 5, 1910, for which kindly accept thanks. *Your policy which has lapsed is reinstated, subject to* the terms and conditions of the health certificate and prompt payment of the premium notes when due. The premium receipt has been attached to the premium notes and will be sent to you when the last note is paid."

The note maturing on the 8th day of January, 1911, was not paid at maturity, or at all, and thereafter, on the 30th day of January following, the insured died in the city of Spokane.

The foregoing facts appeared on the face of the complaint, which contains this further allegation:

"That in accordance with the terms of said policy, a dividend became due from defendant to Mary B. Kirkendall on January 1, 1911, the amount of same being unknown to deceased, the facts on which same is based being solely and wholly in possession of said defendant company, and it was impossible for the said deceased to know, and the said deceased did not know, of the amount, if any, that would become due upon the note given by deceased which would mature on the 8th day of January, 1911, and no statement was given out by the said defendant company to the insured of said amount, and by reason of said facts said deceased was unable to make payment, if any was due until she should first know the amount required to be paid."

The defendant has interposed a general demurrer, on the ground that the complaint does not state facts sufficient to constitute a cause of action.

[1] It seems to be the view of the plaintiff that the three notes above described were executed under the provisions of the policy which gave the insured the option at any time to pay the premium annually, semiannually, or quarterly, and that the month of grace allowed by another provision of the policy applies to these notes. This position is untenable. The premium became due on August 4, 1910, and the month of grace expired one month later. The premium was not paid and the policy was forfeited. The policy was there-

after reinstated. The three notes were given for a premium long past due, and by an express provision contained in the notes themselves the policy was forfeited ipso facto by their nonpayment.

[2] There is a conflict of authority as to the effect of the failure to pay a note given in payment of a premium on life insurance; but in the federal courts the rule is well settled that failure to pay such a note, containing a provision of forfeiture, works an absolute forfeiture of the policy. Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204, and cases there cited. The reason for this rule is obvious. Promptness of payment is essential in the business of life insurance.

"All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer assurance at the favorable rates they do. Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. It is like the forfeiture of shares in mining enterprises and all other hazardous undertakings. There must be power to cut off unprofitable members, or the success of the whole scheme is endangered. The insured parties are associates in a great scheme. This associated relation exists, whether the company be a mutual one or not. Each is interested in the engagements of all; for out of the coexistence of many risks arises the law of average, which underlies the whole business. An essential feature of this scheme is the mathematical calculations referred to, on which the premiums and amounts assured are based. And these calculations, again, are based on the assumption of average mortality, and of prompt payments and compound interest thereon. Delinquency cannot be tolerated, nor redeemed, except at the option of the company. This has always been the understanding and the practice in this department of business. Some companies, it is true, accord a grace of 30 days, or other fixed period, within which the premium in arrear may be paid, on certain conditions of continued good health, etc. But this is a matter of stipulation, or of discretion, on the part of the particular company. When no stipulation exists, it is the general understanding that time is material, and that the forfeiture is absolute if the premium be not paid. The extraordinary and even desperate efforts sometimes made, when an insured person is in extremis, to meet a premium coming due, demonstrate the common view of this matter. The case, therefore, is one in which time is material and of the essence of the contract. Nonpayment at the day involves absolute forfeiture, if such be the terms of the contract, as is the case here. Courts cannot with safety vary the stipulation of the parties, by introducing equities for the relief of the insured against their own negligence." New York Life Ins. Co. v. Statham et al., 93 U. S. 30, 23 L. Ed. 789.

[3] The policy in this case was therefore clearly forfeited by its own terms, prior to the death of the insured, unless the forfeiture was waived by failure on the part of the company to notify the insured of the amount of the dividend to which she became entitled on January 1, 1911, prior to the maturity of the note, to the end that she might know the amount which she was required to pay. That the right of the company to claim a forfeiture was thus waived seems to be established by the authorities. In Phœnix Ins. Co. v. Dosker, 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65, it was held that:

"Where the premium is, by the contract, subject to a deduction equal in amount to the dividend to which the assured is entitled, it is the duty of the company to give him such notice of that amount, that he may, in due time, pay or tender the balance of the premium."

True, the decision in that case was based in a measure upon the practice of the company; but in the course of his opinion Mr. Justice Harlan said:

"And the understanding between the parties upon this subject is, in part, shown by the practice of the company. Independently of that circumstance, and waiving any determination of the question whether the forfeiture was not absolutely waived by the act of the general agent. in sending notice to the insured after the day fixed for the payment of the premium due September 20, 1876, it was, we think, the company's duty, under any fair interpretation of its contract, having received information as to the post office of the assured, to give seasonable notice of the amount of dividends, and thereby inform him as to the cash to be paid in order to keep alive the policy. And if the contract involves some action on the part of the company for the purpose of determining the amount due by way of premium or assessment, there is no forfeiture until the assured is notified of the amount to be paid." 25 Cyc. 828, and cases cited.

If, therefore, the insured in this case was entitled to a deduction from the amount of her note, which became due on January 8, 1911, by reason of accrued dividends, it would appear to be the duty of the company to give her reasonable notice of the amount of such dividends in order that she might pay the balance.

My views upon this question may change upon a further disclosure of the facts, but in the present state of the record the demurrer will be overruled.