## KAEPPEL v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 5524.

Circuit Court of Appeals, Third Circuit.
July 8, 1935.

900

Sabato M. Bendiner, Irvin Bendiner, and N. S. Winnett, all of Philadelphia, Pa., and William H. Schneller, of Allentown, Pa., for appellant.

Arthur G. Dickson, of Philadelphia, Pa. (Frederick L. Allen, of New York City, of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court against the plaintiff in a suit to recover on an insurance policy, forfeited for the nonpayment of the premium, and the question is whether or not the company could forfeit the policy without giving notice to the insured of the amount of the dividend.

The Mutual Life Insurance Company of New York issued its policy insuring the life of Charles W. Kaeppel, father of plaintiff, on September 5, 1922, for $20,000 on a ten-year term policy. The annual premium was $405.60. It had been paid each year for nine years, so that there was only one premium to be paid, the one in question, before the expiration of the policy. If the insured had died at any time during the term of the policy, while it was in force, the beneficiary, who is the plaintiff in this case, would have received the amount of the policy of $20,000.

Among other things the policy provided that: "The policy shall participate in the surplus of the Company and the proportion of the surplus accruing herein shall be ascertained and distributed * * * at the end of the second and of each subsequent policy-year."

It further provided that:

"At the option of the Insured each such dividend shall be either * * *

"(1) Paid in cash; or

"(2) Used toward the payment of any premium, if the above specified period of grace for such premium has not expired and if the remainder of the premium is duly paid."

On August 18, 1931, the insured wrote the company asking if there was "any value in the policy to my benefit which I could use in paying the premium falling due September 5th next." Two days later, on August 20th, the company, answering, said: "Replying to your letter of August 18th I am inclosing notice of the premium due September 5, 1931 on your policy, No. 3,043,427 and dividend voucher. It will be satisfactory if we receive your remittance on or before October 6, 1931, as the Grace Period will expire on that date. I wish to advise you that there is no loan value on your policy. The policy is written on the ten-year term plan and a term policy has no loan or cash value."

The secretary of the insured, who regularly handled his mail, testified that the dividend voucher was not in the letter when it was received. Apparently nothing further was done in the matter. The 31 days of grace on the policy expired on October 6, 1931. Six days later, October 12, 1931, the insured died. The defendant refused to pay the policy on the ground that it lapsed or was forfeited at the close of the day of October 6, 1931. The plaintiff says that it did not lapse on that day because the defendant in not furnishing the insured with the amount of the dividend, which the policy had earned, waived its right to forfeit or lapse the policy until it had informed the insured of the amount of the dividend so that he would know how much in addition to the dividend he would have to pay in order to satisfy the premium.

The case was tried to the court and jury. At the conclusion both sides asked for binding instructions. The court thereupon dismissed the jury, took the case under advisement, and thereafter rendered a verdict for the defendant and entered judgment thereon.

The case is here on appeal from that judgment. The defendant says that since the verdict found by the trial judge has the force and effect of a verdict by a jury, the facts found by him must be sustained if there is any evidence to support them. It infers that the court found that the dividend voucher giving the amount of the dividend was inclosed in the letter, for that is the disputed fact upon which, under the law, the right to a verdict depends. It further contends that even if the voucher was not in the letter the company was not

required, as a matter of law, to notify the insured of the amount of the dividend before forfeiting the policy.

As to the inference that the learned trial judge found that the voucher was inclosed in the letter, the company was mistaken. While the judge did not expressly find facts as such under the head of "Findings of Fact," yet, as we read his opinion, he did find as a fact that the voucher was not inclosed in the letter. He said in his opinion on page 143, "although the letter (of August 20, 1931, of the company to the insured) stated that a dividend voucher was inclosed, none was found in the letter when it was received by the insured."

As to the right of the defendant to forfeit the policy, the learned trial judge said: "Where the obligation of the insured in respect of a premium payment is to pay only a balance left after deducting from the premium the amount of an unascertained dividend, it is necessary for him to know how much that dividend is so that he may subtract it and send the correct amount. He has no way of getting this knowledge except through the Company. It was not an unreasonable judicial rewriting of the contract to hold that it implied a term that the company must give notice of the amount of the dividend or waive its right to declare a forfeiture for nonpayment of the premium." But after thus stating the general rule, he limited it by a condition to the effect that it applies only when the insured has exercised his option, reserved in the policy, to have the dividends applied to the reduction of the premium; that then, and then only, a definite obligation arises on the part of the company to notify the insured of the amount of the dividend before forfeiting the policy. If the rule is thus limited, the insured did not bring himself within that limitation and the judgment was right, but the text-writers and the cases generally do not support this limitation.

Couch on Insurance, vol. 3, § 667, p. 2192, says: "If the amount of the premium is uncertain, as for instance, where the insured is entitled to have dividends credited thereon, so that he is dependent upon notice for knowledge of the sum due, which notice the insurer has been accustomed to give, * * * an obligation rests upon the company to give notice as a condition precedent to forfeiture or suspension, or the depriving of a member of good standing, and the failure to pay, through the fault or otherwise of those obligated to send notice, does not affect the right of the insured."

Richards on Insurance (4th Ed., 1932), in the section entitled "Payment of Premiums," on page 622, reached the same conclusion. He says: "* * * where dividends are applicable to reduce the amount due for premiums the burden is upon the insurer, before claiming forfeiture, to give notice of the amount of the balance payable by the insured."

William R. Vance, professor of Law at Yale, in his book on Insurance, page 297 (2d Ed., 1930), says that the insured by accepting a policy containing a condition of forfeiture agrees that his rights thereunder shall become defeasible if he fails to pay the specified premium at the times therein designated and under such circumstances there does not rest upon the insurer any legal obligation to be the keeper of the insured's interest by giving him notice of the agreed time of payment, but the insurer may, and usually does, give notice. But he further says that: "The insured cannot be required to pay a premium until he has knowledge of the amount payable. Therefore, when the policy stipulates that all dividends apportioned to such policy may be applied in payment of premiums due thereon, the insured cannot be in default for non-payment until he has notice of the balance due."

Mr. Justice Clark spoke for the Supreme Court of New Hampshire in the case of Eddy v. Phoenix Life Insurance Company, 65 N. H. 27, 18 A. 89, 23 Am. St. Rep. 17, on this question as follows: "When the insured shares in the profits, and at the time when the annual premium becomes due cannot know what amount he will be required to pay the company, the insurers cannot insist on a forfeiture until they give the insured notice of the amount he is required to pay."

In the case of Owen v. New York Life Insurance Company, 126 Miss. 878, 89 So. 770, 772, 17 A. L. R. 1225, the court said: "The insured could not know the amount of these dividends, as this information was peculiarly within the exclusive knowledge of the company, which had full control in the matter of dividends. Under these circumstances it was clearly the duty of the company to notify the insured of the amount of the dividend, in order that he might know the amount in cash he was required to pay to discharge the premium,

and if this notice was not given the company thereby waived the prompt payment of the premium and cannot declare a forfeiture. This view, we think, is founded upon reason and is supported by the great weight of authority."

In Union Central Life Insurance Company v. Caldwell, 68 Ark. 505, 58 S. W. 355, 361, the court laid down the following rule: "The authorities also establish the rule that it is the duty of the company, before taking a forfeiture for default in the payment of a maturing obligation, to notify the assured or beneficiary of the amount of declared dividends, where such dividends are insufficient to meet the obligation. * * * These principles are founded upon reason and common fairness and honesty, and they will have application wherever it becomes necessary to prevent a forfeiture, which is favored neither in law nor equity."

In Reed v. Bankers' Reserve Life Insurance Company (C. C.) 192 F. 408, 411, the court said: "The policy in this case was therefore clearly forfeited by its own terms, prior to the death of the insured, unless the forfeiture was waived by failure on the part of the company to notify the insured of the amount of the dividend to which she became entitled on January 1, 1911, prior to the maturity of the note, to the end that she might know the amount which she was required to pay. *That the right of the company to claim a forfeiture was thus waived seems to be established by the authorities.*"

. In the case of Phœnix Mut. Life Insurance Company v. Doster, 106 U. S. 30, 38, 1 S. Ct. 18, 25, 27 L. Ed. 65, the Supreme Court said that where the amount of the premium was fixed and the insured knew the exact amount which he had to pay to prevent forfeiture of the policy, he was not entitled to notice, but where dividends were not fixed in amount and were available to reduce the premium, the rule was different, which it stated as follows: "Whether the company, in any particular year, declared dividends, and what amount was available in reduction of the premium, were facts known, in the first instance, only to the company, which had full control of the matter of dividends. It certainly was not contemplated that the insured should every year make application, either at the home office, or at the office of its general agent in Chicago, in order to ascertain the amount of dividends. The understanding

between the parties upon this subject is, in part, shown by the practice of the company. Independently of that circumstance, and waiving any determination of the question whether the forfeiture was not absolutely waived by the act of the general agent, in sending notice to the insured after the day fixed for the payment of the premium due September 20, 1876, it was, we think, the company's duty, under any fair interpretation of its contract, having received information as to the post-office of the insured, to give seasonable notice of the amount of dividends, and thereby inform him as to the cash to be paid in order to keep alive the policy."

Under these authorities, if the insured "shares in the profits," if he is "entitled" to have the dividends "applied" or "credited" to the reduction of premiums, if the dividends *"may,"* not *"must,"* be applied to the payment of the premium, it is necessary, in such cases, for the company to give notice to the insured of the amount of the dividends before it may forfeit the policy for the nonpayment of the premiums, and this right, option (2) of the policy in question gave him. We are aware that the Superior Court of Ohio in Manhattan Life Insurance Company v. Smith, 44 Ohio St. 156, 5 N. E. 417, 58 Am. Rep. 806, in an identical, supposititious case uttered dictum to the contrary, but that is not in accord with the great weight of authority and sound reason.

The test, therefore, which requires an insurance company in a participating policy to give notice to the insured of the amount of the dividend apportioned to his policy before forfeiting it for the nonpayment of the premium, is the *existence* or *reservation* of an option in the policy giving him the right to apply the dividends toward the payment of the premium. In the policy under consideration that option was reserved to the insured, and in consequence a duty arose on the part of the company to give notice to him. This duty it had performed every year until the last one of the term. Under these circumstances the company could not forfeit the policy for the nonpayment of the premium and defend the action on that ground. So far as the rights of the insured are concerned, *it makes no difference whether or not the notice was left out of the envelope by mistake.* The insured was entitled to notice so that he would know how much he would have to pay in addition to the dividend in order to

satisfy the premium and keep the policy alive and this he did not receive.

But regardless of the right reserved to the insured in the policy itself, text-writers and decisions generally hold that when the company has regularly and customarily given notice to the insured of the amount of the dividend, it cannot forfeit the policy for the nonpayment of the premium until it has given notice to him of the amount of the dividend, or informed him that it has abandoned that custom or practice.

Couch says that: "Where he is not otherwise entitled to notice, the greater number of the decisions apparently support the proposition that an insurance company, which adopts and uniformly adheres to the custom or practice of giving notice of payments for such a length of time as leads those insured to believe notice will be given, cannot declare a forfeiture without giving notice, or without previously advising the persons who have relied upon receiving notice that the custom will be or has been discontinued." Volume 3, p. 2193.

May on Insurance, vol. 2, § 356, (a), says that: " * * * where from the course of dealing between the parties the insured has a right to believe that notice will be given to him of the amount due and the time it is to be paid, the company cannot in the absence of such notice set up the failure to pay."

In Phoenix Mut. Life Insurance Company v. Doster, supra, it was provided in the policy that the dividends set apart to the insured be applied in the discharge, pro tanto, of the annual premiums which were to be paid on September 20th of each year. Notice of the amount of the dividends had been sent to the insured for the years 1872, 1873, 1874, and 1875, and the premiums had been paid, but not until several days after they had been due. The insured had changed his address in September, 1875, and this the company knew, but it did not send the customary notice to the insured for 1876 until October of that year and it did not reach the son of the insured until October 6th, just before his father lost his life in an accident. The company forfeited the policy and resisted the payment thereof on the ground that the policy had lapsed or was forfeited. Suit was brought on the policy, and the charge of the trial court was summarized by the Supreme Court as follows: "After stating that by the terms of the policy the premiums could be paid either at the home office or to an agent of the company, producing the proper receipt, and that by the terms of the application, which was the basis of the contract of insurance, the annual dividends due the insured could be applied in discharge of premiums, the court instructed the jury that if they found from the evidence that it had been the invariable custom of the company to transmit to the insured, by mail or by its local agent, a statement of the amount of the premium due, after deducting the dividend, with a notice of the time when, the place where, and the person to whom, the premium could be paid, then the insured had good reason to expect and rely on such statement, and notice being sent to him; and that if the insurance company, by its managing agent, had notice of the post-office address of the insured before the usual time of sending out notice, but failed and neglected to transmit such statement and notice to the insured at his post-office address until the fourth day of October, and the same did not reach him, or the payees in the policy, until October 6th, and that the insured or payees were ready and waiting to pay said premium when the notice and statement should be received, and by reason of such failure of the company to send the notice and statement, and by reason of that alone, the premium due in September, 1876, was not promptly paid * * * then the policy did not lapse or become forfeited, notwithstanding the premium was not paid on the day named in the policy, and in the. life-time of the insured." This charge the court said was "substantially correct." At least, the company could ask no more and the plaintiff could not complain for it had secured the verdict.

In the case of New York Life Insurance Company v. Eggleston, 96 U. S. 572, 578, 24 L. Ed. 841, the company issued its policy of insurance for $5,000 on the life of Eggleston on November 11, 1868. The premium of $306 was to be paid semiannually, one half on November 11th and the other half on May 11th of each year. The half premium was not paid on November 11, 1871. Payment had been made sometimes at Savannah, Ga., and sometimes at Vicksburg, Miss. Notice had regularly been sent informing the insured where and to whom to pay the premium. It appears that notice was not sent for the payment due on November 11, 1871. It was ascertained by inquiry that payment was to be made to the subagent at Macon, Miss. Payment was tendered on December 30,

1871, but the agent refused to accept it unless a certificate of the health of the insured was furnished. This could not be done, for he was then sick and died on January 5, 1872.

Suit was brought on the policy, and in the course of the opinion on appeal the court said: "Such notice, it would seem, had never been omitted prior to the maturity of the last instalment. The effect of the judge's charge was, that if this was the fact, and if no such notice had been given on that occasion, and the failure to pay the premium was solely due to the want of such notice, it being ready, and being tendered as soon as notice was given, no forfeiture was incurred. We think the charge was correct, under the circumstances of this case. The insured had good reason to expect and to rely on receiving notice to whom and where he should pay that instalment. It had always been given before; the office of the company was a thousand miles away; and they had always directed him to pay to an agent, but to different agents at different times."

Vance in his book on Insurance, mentioned above, on page 297, in a footnote epitomizes the teaching of the Eggleston Case as follows: "Where an insurance company has been accustomed to inform the insured of the place where, and the agent to whom he should make payment of each premium as it fell due, the insured is privileged to rely on receiving the usual notice, and a non-payment of the premium will not avoid the policy in case the agency at which payment had been previously made has been discontinued and the company has neglected to inform the policy-holder where and to whom the premium should be paid."

In the case of Attorney General v. Continental Life Insurance Company, 33 Hun (N. Y.) 138, the defendant company issued its policy of insurance to William Tyner on April 26, 1870, for $5,000. The annual premium was $92.50 payable on or before April 4th every year. The policy provided that if the premium was not paid as specified in the policy, it should be null and void. The company had sent notice every year up to 1876. In addition to the notice sent to the insured, a receipt for the payment of the premium was sent to the bank which received the premium from the insured, delivered the receipt, and forwarded the premium to the company. The policy was known as a "participating policy" which permitted the insured to share in the dividends of the company and those apportioned to the policy had been applied to the reduction of the premiums. The company did not send notice to the insured of the amount of the dividend for the premium maturing on April 14, 1876. The premium was not paid on that, or any other, date as provided in the policy and the company forfeited the policy. The insured died on December 22, 1876. The company refused to pay the insurance and this suit was brought. The plaintiff secured a judgment and on appeal the Supreme Court of New York said: "From this course of dealing which had arisen between the company and the assured under this policy, he had the right to believe that notice would be given to him of the amount due from him when the company required this premium to be paid, and that a receipt would be forwarded, as receipts previously had been, to the bank, containing the same information. That conclusion could be reasonably, as well as correctly drawn by him from the manner in which, with the assent of the company, the same business had previously been transacted. The assured would not be in fault for assuming that a like course would be taken as to the premium due in April, 1876, as had been in the statement and collection of the premiums for the preceding years. He could very naturally assume that when the company desired the premium to be paid, that the ordinary receipt would be sent forward and information given to him of the fact, and rely securely upon the supposition that this usage which had grown up between himself and the company, would still be observed. * * * The circumstances were such as to induce this conviction in the mind of the assured, and it would be a fraud upon him and his personal representative to permit the company, in violation of this assurance, to forfeit the policy without notice at any time to him that it intended to abandon the course which had previously been so uniformly followed; and that, the law will not permit."

Some of the cases go so far as to say that custom and usage in respect to personal notice to the plaintiff become a part of the contract, but this upon reason and authority seems untenable. The great weight of authority is that while custom and usage do not become an actual part of the contract between the insured and the company, yet they are such an incident thereto and are so incorporated into the spirit of

their dealings as to require the company to keep them up or to give notice of their discontinuance. Grant v. Alabama Gold Life Ins. Co., 76 Ga. 575, 582.

It does not appear whether or not the failure of the insured to pay the premium in the case at bar on or before October 6, 1931, was due solely to the fact that notice of the amount of the dividend was not sent to him. True he wrote the company on August 18th, asking if there was any value in the policy which he could use in paying the premium. That in itself did not indicate his inability to pay the premium then or on October 6, 1931. It indicated that he desired to use any value the policy might have in paying the premium, and this desire he might have had regardless .of his ability to pay. The company replied that the policy had "no loan value," but did not then or at any other time inclose a statement of the amount of the dividend though it apparently intended to do so. The cases do not require notice to be given on the ground of ability or inability of the insured to pay the premium. They require it to be done because the company alone knows the amount of the dividend and this knowledge the insured is entitled to have when preparing to pay the premium on his policy.

Whether based on the fact that the insured shared in the profits of the company and was entitled to have the dividends applied to the reduction of the premium, or upon the practice or custom of the company to give personal notice of the amount of the dividends, the insured had the right to conclude that notice would be sent to him of the amount of the dividend. Until that was done, under the facts of this case, the company could not forfeit the policy for the nonpayment of the premium and defend on the ground that the policy had lapsed.

When the evidence was all in and the "testimony closed," both sides presented a general point to the court to charge to the jury. The point submitted by the plaintiff was that "under all the law, the verdict must be for the plaintiff in the amount of $22,109.90," and the point submitted by the defendant was that "under all the evidence in this case your verdict should be for the defendant." Thereupon the court took the case from the jury and found "a general verdict for the defendant," and thereafter entered judgment thereon. Having found that the notice of the dividend was not in-

closed in the envelope sent to the insured, there was no other evidence sufficient to support the verdict and as a matter of law the court erred in entering judgment for the defendant.

The verdict should have been found for the plaintiff. The judgment is reversed, with directions to the District Court (under the authority of Baltimore & Carolina Line, Inc., v. Redman [U. S.] 55 S. Ct. 890, 79 L. Ed. ——, decided June 3, 1935) to enter judgment for the plaintiff for the sum of $20,000 with interest thereon from October 12, 1931.